IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Connector 2000 Association, Inc.,<br><br>Debtor. | Case No. 10-04467-dd<br>Chapter 9 |

**PLAN FOR ADJUSTMENT OF DEBTS**

Connector 2000 Association, Inc. ("Debtor"), in furtherance of effecting an adjustment of its debts under the provisions of Chapter 9 of the Bankruptcy Code, proposes the following Plan for Adjustment of Debts.

# TABLE OF CONTENTS

**ARTICLE I** ................................................................................................................................4
  DEFINITIONS ............................................................................................................................4
**ARTICLE II** ...............................................................................................................................8
  TREATMENT OF ADMINISTRATIVE CLAIMS. ..................................................................8
    2.1    Administrative Claims. ..................................................................................................8
**ARTICLE III** ..............................................................................................................................8
  CLASSIFICATION OF CLAIMS ..............................................................................................8
**ARTICLE IV** ..............................................................................................................................9
  TREATMENT OF CLASSES ....................................................................................................9
    4.1    Class 1.  Senior Bondholders Claims. ........................................................................9
    4.2    Class 2.  Subordinate Bondholders Claims. .................................................................9
    4.3    Class 3.  Bond Trustee Claims. .................................................................................10
    4.4    Class 4.  SCDOT Claims. .......................................................................................10
    4.5    Class 5.  Executory Contract Claims .......................................................................10
    4.6    Class 6.  Lehman Brothers, Inc. Claims ...................................................................10
**ARTICLE V** ..............................................................................................................................11
  EXECUTORY CONTRACTS ..................................................................................................11
**ARTICLE VI** ............................................................................................................................11
  ESTIMATION OF CLAIMS ....................................................................................................11
**ARTICLE VII** ..........................................................................................................................12
  MEANS FOR EFFECTING THE PLAN .................................................................................12
**ARTICLE VIII** .........................................................................................................................15
  EFFECTIVE DATE; MODIFICATION OF PLAN .................................................................15
    8.1    Conditions Precedent to Confirmation .......................................................................15
    8.2.   Conditions Precedent to Effective Date .....................................................................15
    8.3    Waiver of Conditions to Effectiveness ......................................................................16
**ARTICLE IX** ............................................................................................................................16
  CLAIMS ADMINISTRATION ................................................................................................16
**ARTICLE X** ..............................................................................................................................17
  MISCELLANEOUS ..................................................................................................................17
    10.1  Delivery of Instruments .............................................................................................17
    10.2  Headings .....................................................................................................................17
    10.3  Automatic Stay ...........................................................................................................17
    10.4  Discharge ....................................................................................................................17
    10.5  Disputed Claims .........................................................................................................17
    10.6  Record Date ................................................................................................................17

10.7 Releases ........................................................................................................................17
10.8 Limitation of Liability ..................................................................................................18
10.9 Injunction .....................................................................................................................18
10.10 Retention of Rights .....................................................................................................19
10.11 Further Acts ................................................................................................................19

**ARTICLE XI** ..................................................................................................................................**19**
  RETENTION OF JURISDICTION OF THE COURT .............................................................19

## ARTICLE I

## **DEFINITIONS**

The defined terms set forth below and used in Plan shall have the meanings provided in this Article I.

Allowed Administrative Claim shall mean any right to payment constituting a cost or expense of administration of the Case allowed under Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

Allowed Claim shall mean any prepetition Claim against the Debtor, proof of which was filed on or before any bar date fixed by the Court, or any Claim that appears in the list of creditors filed by the Debtor and is not listed by the Debtor as disputed, contingent, or unliquidated as to amount, and, in either case, a Claim as to which no objection as to the allowance thereof has been interposed by the Debtor on or before 60 days after the Effective Date or, if such objection has been interposed, on the date which there has been entered a Final Order allowing such Claim provided, however, that the claims represented by the Bonds are deemed Allowed Claims without the need to file a proof of Claim.

Amended and Restated Bonds shall collectively mean the Tier 1 Bonds, Tier 2 Bonds, and Tier 3 Bonds, the material terms and conditions of which will be set forth in the Amended Trust Indenture and filed with the Bankruptcy Court as part of the Plan Supplement.

Amended Trust Indenture shall mean the Original Trust Indenture as modified and amended by the Plan and in form and substance acceptable to the Senior Bonds Trustee.

Approval Date shall mean _____, 2010, the day the Court approved the Disclosure Statement and authorized the Debtor to solicit acceptances of the Plan.

Bankruptcy Code shall mean Title 11 of the United States Code, as amended.

Bar Date shall mean September 22, 2010, which was the last date set for the filing of Claims as provided in the Court's Order Upon Commencement of Chapter 9 Case Establishing Certain Deadlines and Notice of Commencement of Case, of the Automatic Stay and of the Order for Relief filed in the Case on June 25, 2010.

Bondholders shall mean beneficial owners of the Bonds.

Bonds shall collectively mean the Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998A, B and C issued on February 11, 1998 pursuant to the Original Trust Indenture, to finance the construction of the Southern Connector, including Capital Appreciation Bonds, Senior Bonds and Subordinate Bonds as defined below.

Capital Appreciation Bonds shall mean the Series 1998B Bonds and the Series 1998C Bonds which consist of zero-coupon obligations which accrete interest and mature serially starting January 1, 2008 and continuing until January 1, 2038, with interest accreting and payable at maturity or at such earlier time that it is otherwise payable.

4

Case shall mean the above-captioned Chapter 9 bankruptcy case.

Claim(s) shall mean Claim as defined in 11 U.S.C. §101(5).

Confirmation shall mean the entry by the Court of an order confirming the Plan in accordance with Section 943 of the Bankruptcy Code.

Confirmation Order shall mean that order entered by the Court confirming the Plan in accordance with Section 943 of the Bankruptcy Code.

Court shall mean the United States Bankruptcy Court for the District of South Carolina.

Debtor shall mean Connector 2000 Association, Inc.

Debt Service Reserve Fund shall mean the account or fund maintained with the New Trustee for the benefit of the holders of the Tier 1 Bonds (and, if all Tier 1 Bonds have been redeemed, the holders of the Tier 2 Bonds, and if all Tier 2 Bonds have been redeemed, the holders of the Tier 3 Bonds).

Debt Service Reserve Requirement shall mean the initial amount, if any, deposited in the Debt Service Reserve Fund on the effective date of the Plan, if any, from amounts remaining in the Southern Connector Toll Road Revenue Bond Debt Service Fund and the Southern Connector Toll Road Revenue Bond Debt Service Reserve Fund (each as defined in the Original Trust Indenture).

Disclosure Statement shall mean this document, which is the disclosure document describing the Plan which was filed by the Debtor, approved by the Court, and distributed to the various Classes under the Plan as provided in Section 901 and 1125 of the Bankruptcy Code.

Disputed Claim shall mean any Claim which has been scheduled by the Debtor as disputed, contested, contingent, or unliquidated, or any Claim as to which an objection to the allowance thereof has been interposed and allowance or disallowance of such Claim has not been determined by a Final Order.

DTC shall mean the Depository Trust Corporation.

Effective Date shall mean that date upon which all of the covenants and conditions contained in Section VII D. of the Plan have been satisfied, which shall occur on or before sixty (60) days from entry of the Confirmation Order or such other date as extended by order of the Court.

Final Decree shall mean the order of the Court entered after the Effective Date and after the Case is fully administered, closing the Case.

Final Order shall mean an order of the Court as to which (a) the time for appeal has expired and no notice of appeal has been filed; (b) no stay, as provided by Rule 8005 of the Federal Rules of Bankruptcy Procedure, has been issued with respect to any timely filed appeal;

or (c) any timely filed appeal in which a stay which has issued has been finally determined or dismissed.

Goldman shall mean Goldman Sachs & Co.

License Agreement shall mean the document entitled "License Agreement by and between South Carolina Department of Transportation, an agency of the State of South Carolina ("SCDOT") and Connector 2000 Association, Inc. A South Carolina Non-profit Corporation ("Association") Dated February 11, 1998," whereby SCDOT granted the Debtor rights and obligations to finance, acquire, construct, and operate an approximately 16 mile fully controlled access toll highway known as the Southern Connector and to construct the South Carolina Highway 153 Extension.

List of Creditors shall mean the list of creditors that the Debtor has filed with the Court pursuant to Section 924 of the Bankruptcy Code as may be amended from time to time.

Net Revenues shall have the meaning set forth in the Amended Trust Indenture.

New Trustee shall mean the U.S. Bank National Association as trustee of the Amended and Restated Bonds governed by the Amended Trust Indenture.

Original Trust Indenture shall collectively mean the Master Indenture of Trust and a First Supplemental Indenture of Trust, each dated as of February 1, 1998 between the Debtor and First Union National Bank, as predecessor in trust to U.S. Bank National Association, as trustee, pursuant to which the Bonds were issued to finance the construction of the Southern Connector, and the Second Supplement.

Petition Date shall mean June 24, 2010, the date on which the Debtor filed its petition under Chapter 9 of the Bankruptcy Code.

Plan Documents means the Plan and all related documents, including but not limited to the Amended Trust Indenture and all attachments, schedules and exhibits thereto, as the same may be amended, modified or supplemented, in accordance with the terms of the Confirmation Order.

Plan Participants shall mean the Debtor, its directors, officers, and employees, the Senior Bonds Trustee, the Subordinate Bonds Trustee, and the New Trustee and professionals and consultants providing services to one or more of such persons in connection with the Case.

Plan Supplement means the supplement to the plan containing any Plan Documents either not originally filed with the Plan or modified versions of Plan Documents originally filed with the Plan, which supplement will be filed with the Court no later than 14 days prior to the Voting Deadline.

Projected Net Revenues shall mean (i) projected revenues for the Southern Connector for the relevant year, as set forth in Figure 4.4.2 of the Traffic and Revenue Report for Southern Connector dated May 4, 2009, prepared by Stantec Consulting Services Inc., less (ii) the reorganized Debtor's projected Operating Costs for such year, as determined by increasing the

6

aggregate amount of expenses set forth in the reorganized Debtor's Annual Budget for 2010 (less certain extraordinary expenses) by 3.0% per annum for each year after 2010, plus (iii) projected non-operating revenues and other income of the reorganized Debtor for such year, such as interest earned on invested funds.

SCDOT shall mean the South Carolina Department of Transportation.

Second Supplement shall mean the Second Supplemental Indenture of Trust dated October 16, 2002, which became effective January 1, 2008.

Senior Bonds Trustee shall mean U.S. Bank National Association, as the Trustee for the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998A and Series 1998B Bonds.

Senior Bonds shall collectively mean the Series 1998A Bonds and the Series 1998B Bonds.

Series 1998A Bonds shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $66,200,000 original principal amount of Senior Current Interest Bonds, Series 1998A.

Series 1998B Bonds shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $87,385,622 original principal amount of Senior Capital Appreciation Bonds, Series 1998B.

Series 1998C Bonds or Subordinate Bonds shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $46,592,058 original principal amount of Subordinate Capital Appreciation Bonds, Series 1998C.

Southern Connector shall mean the sixteen-mile, four-lane toll highway south of the City of Greenville that connects the I-85/I-185 interchange (exit 42) with the I-385/U.S. 276 interchange (exit 30) and is owned by SCDOT and operated by the Debtor under the License Agreement.

Stantec shall mean Stantec Consulting Services, Inc.

Subordinate Bonds shall mean the Series 1998C Bonds.

Subordinate Bonds Trustee shall mean HSBC Bank USA, NA, the trustee for the Subordinate Bonds appointed under the Second Supplement.

Tier 1 Bonds shall mean the Amended and Restated Bonds consisting of approximately $172,115,908 aggregate principal amount of (i) senior secured current interest bonds, accruing interest at 5.80% per annum payable semi-annually in cash, and maturing in 2051, (ii) senior secured capital appreciation bonds, accreting interest at 5.80 % per annum, maturing annually and with a final maturity in 2051, and/or (iii) senior secured current interest bonds, accruing

7

interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051 as further described in the Plan Supplement.

Tier 2 Bonds shall mean the Amended and Restated Bonds consisting of approximately $29,805,074 aggregate principal amount of (i) senior subordinated secured capital appreciation bonds accreting interest at 5.80% per annum, payable in cash (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds), and maturing in 2051, and/or (ii) senior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051 as further described in the Plan Supplement.

Tier 3 Bonds shall mean the Amended and Restated Bonds consisting of approximately $4,215,099 aggregate principal amount of (i) junior subordinated secured capital appreciation bonds accruing interest at 5.80% per annum, payable semi-annually (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds and the Tier 2 Bonds), and maturing in 2051, and/or (ii) junior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum, semi-annually, and maturing in 2051 as further described in the Plan Supplement.

Trust Estate shall mean all assets that serve as collateral for the Amended and Restated Bonds, including the present collateral assignment of the Debtor's rights under the License Agreement and the Net Toll Revenues as more fully described in the Amended Trust Indenture.

Original Trust Indenture shall collectively mean the Master Indenture of Trust and a First Supplemental Indenture of Trust, each dated as of February 1, 1998 between the Debtor and First Union National Bank, as predecessor in trust to U.S. Bank National Association, as trustee, pursuant to which the Bonds were issued to finance the construction of the Southern Connector, and the Second Supplement.

## ARTICLE II

**TREATMENT OF ADMINISTRATIVE CLAIMS.**

**2.1    Administrative Claims.** Allowed Administrative Claims are claims of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code. Throughout the course of the Chapter 9 Case, the Debtor has endeavored to satisfy administrative expenses as they became due. Accordingly, the Debtor believes that all claims that otherwise would constitute Allowed Administrative Claims previously have been or will be satisfied in the ordinary course of business prior to or within ten (10) days of the Effective Date, by the Debtor unless such Claim or Claims are not yet an Allowed Claim(s) by order of the Court where required.

## ARTICLE III

**CLASSIFICATION OF CLAIMS**

In accordance with Bankruptcy Code § 1122, the Debtor hereby classifies Claims in the following classes.

8

3.1 <u>Class 1</u>. Class 1 consists of the claims of the holders of the Senior Bonds. This class is impaired.

3.2 <u>Class 2</u>. Class 2 consists of the claims of the holders of the Subordinate Bonds. This class is impaired.

3.3 <u>Class 3</u>. Class 3 consists of the claims of the Senior Bonds Trustee and Subordinate Bonds Trustee. This class is unimpaired.

3.4. <u>Class 4</u>. Class 4 consists of the claims of the SCDOT. This class is unimpaired.

3.5 <u>Class 5</u>. Class 5. Class 5 consists of all claims arising from the rejection of executory contracts, if any. This class is impaired.

3.6 <u>Class 6</u>. Class 6 consists of Lehman Brothers, Inc. This class is impaired.

ARTICLE IV

**TREATMENT OF CLASSES**

The Classes set forth under Article III shall be treated as follows:

**4.1    Class 1.  Senior Bondholders Claims.**

Holders of the Senior Bonds will be issued Tier 1 Bonds in the aggregate principal amount of approximately $172,115,908 on the terms set forth in the Amended Trust Indenture and which will generally include (i) senior secured current interest bonds, accruing interest at 5.80% per annum payable semi-annually in cash, and maturing in 2051, (ii) senior secured capital appreciation bonds, accreting interest at 5.80 % per annum, maturing annually and with a final maturity in 2051, and/or (iii) senior secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051. The Debtor's obligations in respect of the Tier 1 Bonds will be secured by a first lien on the Trust Estate.

Debtor will also issue to Class 1 creditors approximately $29,805,074 in aggregate principal amount of Tier 2 Bonds on the terms set forth in the Amended Trust Indenture and which will generally include (i) senior subordinated secured capital appreciation bonds accreting interest at 5.80% per annum, payable at the option of the Debtor in cash (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds), and maturing in 2051, and/or (ii) senior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051. The Debtor's obligations in respect of the Tier 2 Bonds will be secured by a second lien on the Trust Estate. The Tier 2 Bonds will be subordinated to the Tier 1 Bonds in all respects, including in right of payment and priority of liens.

**4.2    Class 2.  Subordinate Bondholders Claims.**

If holders of the Series C Bonds vote to accept the Plan in the requisite percentages, and holders of at least __% of the outstanding accreted amount of the Series C Bonds do not object to

9

confirmation of the Plan, the holders of the Series C Bonds shall receive their pro rata share of Tier 3 Bonds in the aggregate principal amount of approximately $4,215,099 on the terms set forth in the Amended Trust Indenture and which will generally include (i) junior subordinated secured capital appreciation bonds accruing interest at 5.80% per annum, payable at the option of the Debtor in cash (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds and the Tier 2 Bonds), and maturing in 2051, and/or (ii) junior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum, semi-annually, and maturing in 2051. The Debtor's obligations in respect of the Tier 3 Bonds will be secured by a third lien on the Trust Estate. The Tier 3 Bonds shall be subordinated to the Tier 1 Bonds and Tier 2 Bonds in all respects, including in right of payment and priority of liens, and such subordination provisions shall be subject to the approval not to be unreasonably withheld of the Senior Bonds Trustee for the Series 1998A Bonds and the Series 1998B Bonds.

**4.3    Class 3. Bond Trustee Claims.** The claims of the Senior Bonds Trustee and Subordinate Bonds Trustee for administrative fees and expenses due under the Original Trust Indenture have been paid in the ordinary course of business. Debtor does not believe there are any claims past due amounts outstanding to these creditors. To the extent such ongoing fees have not been paid, they will be paid in the ordinary course, they will be paid in cash prior to the Effective Date or at such later time as provided for by agreement between the Trustees and such creditors. Accordingly, holders of Class 3 claims are not impaired under or entitled to vote on the Plan.

**4.4    Class 4. SCDOT Claims.** The claims of SCDOT are general unsecured claims arising under the License Agreement. Such claims will be paid in the priority established by the License Agreement which is being assumed under the Plan. Accordingly, SCDOT as a Class 4 claimant is not impaired under or entitled to vote on the Plan. Based upon the projected revenues and priority of payments established by the Original Trust Indenture as restated in the Amended Trust Indenture, it is expected that the distributions to SCDOT will be $0.

**4.5    Class 5. Executory Contract Claims.** This class consists of any claims arising from the rejection of an executory contract. However, the Debtor does not believe there are any claims within this class, as set forth in Section VII(C)(4) below.

**4.6    Class 6. Lehman Brothers, Inc. Claims.** Debtor intends to object to the claim of Lehman Brothers. If the claim is deemed valid, Debtor will seek an order or judgment declaring that any funds being held by the Trustee in escrow which were derived from the liquidation of assets pledged by Lehman Brothers pursuant to the terms of a Repurchase Agreement dated February 12, 2008 issued in connection with the Bonds are property of the Debtor and not subject to any trust or security interest in favor of Lehman Brothers. However, should the Court rule that the funds being held by the Trustee in escrow are subject to any constructive trust or security interest in favor of Lehman Brothers, then to the extent the claim of Lehman Brothers exceeds the escrowed funds, it will be a general unsecured claim. Debtor does not expect to have sufficient funds to make any distribution to the general unsecured portion of this claim should it be determined Lehman Brothers has a valid claim which exceeds the escrowed funds. Accordingly, the holder of the Class 6 Claim is impaired under and entitled to vote on the Plan.

All impaired Classes are entitled to vote on the Plan, in accordance with Bankruptcy Code §1126 to the extent made applicable by Bankruptcy Code § 1126.

## ARTICLE V

### EXECUTORY CONTRACTS

As discussed in Section V of the Disclosure Statement, Debtor engaged Goldman to advise Debtor in connection with the potential restructuring of Debtors obligations ("Goldman Contract"). Debtor asserts that such engagement has concluded and the Goldman Contract terminated. However, Goldman's engagement gave certain rights to Goldman that, under certain conditions, could be exercised at Goldman's option in the future. Debtor is listing the Goldman engagement as an executory contract which is being specifically rejected under the Plan to eliminate the possibility of any assertion by Goldman of subsequent claims thereunder.

All contracts and leases of the Debtor that may constitute executory contracts or unexpired leases as of the Petition Date shall be assumed except for the Goldman Contract or such contracts and leases that (a) have been rejected pursuant to Order of the Court entered prior to the Effective Date, (b) have been renegotiated and either assumed or rejected on renegotiated terms pursuant to Order of the Court entered prior to the Effective Date, (c) are the subject of a motion to reject that is pending before the Bankruptcy Court on the Effective Date, (d) are the subject of a motion to assume on renegotiated terms that is pending before the Court on the Effective Date, or (e) are specifically treated otherwise in the Plan or in the Confirmation Order. Contracts rejected or assumed pursuant to (a) - (e) above shall be rejected or assumed, as the case may be, as of the date set forth in the operative motion, agreement or order arising therewith. The Debtor intends to assume all known executory contracts to which the Debtor is a party, including but not limited to the License Agreement, but excluding the Goldman Contract.

Attached as Exhibit 4.1 to the Disclosure Statement is a list of the known executory contracts being assumed by the Debtor, including but not limited to the License Agreement. Attached as Exhibit 4.2 to the Disclosure Statement is a list of the known executory contracts being rejected by the Debtor, specifically, the Goldman Contract.

**If an executory contract is not set forth on Exhibit 4.1 to the Disclosure Statement or has not been referred to otherwise in this Plan, then such contract shall be deemed rejected as of the Effective Date, if any, and shall be treated as a Class 5 creditor.**

Any contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, shall be deemed rejected.

## ARTICLE VI

### ESTIMATION OF CLAIMS

Exhibit 3 to the Disclosure Statement is an estimate of the Allowed Claims in Classes 1 through 4 under the Plan as of September 22, 2010.

11

# ARTICLE VII

## **MEANS FOR EFFECTING THE PLAN**

The terms of the Bonds will be amended and restated by the Debtor The material terms and conditions of the Amended and Restated Bonds will be set forth in the Amended Trust Indenture that will be filed with the Court as part of the Plan Supplement. Generally, the Amended and Restated Bonds will consist in parts of approximately $172,115,908 aggregate principal amount of (i) senior secured current interest bonds, accruing interest at 5.80% per annum payable semi-annually, and maturing in 2051, (ii) senior secured capital appreciation bonds, accreting interest at 5.80 % per annum, maturing annually and with a final maturity in 2051, and/or (iii) senior secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051.[1] The Debtor's obligations in respect of the Tier 1 Bonds will be secured by a first lien on the Trust Estate, including the present collateral assignment of the Debtor's rights under the License Agreement. It is estimated that payments on the Tier 1 Bonds will equal approximately 83.5% of the Debtor's Projected Net Revenues in each year.

The Amended and Restated Bonds will also include approximately $29,805,074 aggregate principal amount of (i) senior subordinated secured capital appreciation bonds accreting interest at 5.80% per annum, payable in cash (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds), and maturing in 2051, and/or (ii) senior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum semi-annually, and maturing in 2051. The Debtor's obligations in respect of the Tier 2 Bonds will be secured by a second lien on the Trust Estate. The Tier 2 Bonds will be subordinated to the Tier 1 Bonds in all respects, including in right of payment and priority of liens. It is estimated that payments on the Tier 2 Bonds will equal approximately 14.5% of the Debtor's Projected Net Revenues in each year.

If holders of the Series C Bonds vote to accept the Plan in the requisite percentages, and holders of at least ___% of the outstanding accreted amount of the Series C Bonds do not object to Confirmation of the Plan, the holders of the Series C Bonds shall receive their pro rata share of approximately $4,215,099 aggregate principal amount of (i) junior subordinated secured capital appreciation bonds accruing interest at 5.80% per annum, payable semi-annually (but only if the Debtor is current in making all payments in respect of the Tier 1 Bonds and the Tier 2 Bonds), and maturing in 2051, and/or (ii) junior subordinated secured current interest bonds, accruing interest and/or contingent interest at 5.80% per annum, semi-annually, and maturing in 2051. The Debtor's obligations in respect of the Tier 3 Bonds will be secured by a third lien on the Trust Estate. Tier 3 Bonds shall be subordinated to the Tier 1 Bonds and Tier 2 Bonds in all respects, including in right of payment and priority of liens, and such subordination provisions shall be subject to the approval  not to be unreasonably withheld of the Trustee for the Series

---

[1] The type, principal amount and interest rate of the Amended and Restated Bonds are subject to revision (e.g., reduced principal amount but increased interest rate) but in any case shall provide for semi-annual payments that aggregate annually: (i) 83.5% of the post-Effective Date Debtor's Projected Net Revenues in such year for the Tier 1 Bonds; (ii) 14.5% of the post-Effective Date Debtor's Projected Net Revenues in such year for the Tier 2 Bonds; and (iii) 2.0% of the post-Effective Date Debtor's Projected Net Revenues in such year for the Tier 3 Bonds.

1998A Bonds and the Series 1998B Bonds. It is estimated that payments on the Tier 3 Bonds will equal approximately 2.0% of the Debtor's Projected Net Revenues in each year.

The Amended and Restated Bonds will be governed by the Amended Trust Indenture between the Debtor and U.S. Bank National Association, as Trustee (the "New Trustee"). The position of the Subordinate Bond Trustee will be eliminated. A copy of the Amended Trust Indenture and the terms of the Amended and Restated Bonds will be filed as part of the Plan Supplement.

The Amended and Restated Bonds will be expressly non-recourse to the Debtor and payable solely from the Trust Estate.

As stated above, if holders of the Series C Bonds vote to accept the Plan in the requisite percentages, and holders of at least __% of the outstanding accreted amount of the Series C Bonds do not object to confirmation of the Plan, the holders of the Series C Bonds shall receive their pro rata share of the Tier 3 Bonds. The holders of the Series C Bonds will not receive any distribution if they do not so vote to accept the Plan, or if holders of more than __% of the aggregate principal (accreted) amount of Series C Bonds object to confirmation of the Plan.

The Amended Trust Indenture shall govern the Amended and Restated Bonds. The Amended Trust Indenture is substantially similar in form and substance to the Original Trust Indenture, except that it includes the following terms:

- Mandatory Redemption: If in any year (i) the Debtor is current in making all payments in respect of the Amended and Restated Bonds for such year and for all previous years, (ii) the Debtor is otherwise in compliance with the Amended Trust Indenture, including without limitation funding and maintaining the Debt Service Reserve Fund, and (iii) the Debtor has excess Net Revenues, then the Debtor shall apply such excess Net Revenues in such year to redeem Tier 1 Bonds and, if all Tier 1 Bonds have been redeemed, Tier 2 Bonds, and if all Tier 2 Bonds have been redeemed, Tier 3 Bonds. The redemption price shall be 105% of the par value or 105% of the accreted value of the relevant Bonds, plus accrued and unpaid interest thereon to the redemption date.

- Optional Redemption: Prior to the tenth anniversary of the effective date of the Plan, the Debtor may, from time to time, redeem any of the Tier 1 Bonds (and, if all Tier 1 Bonds have been redeemed, Tier 2 Bonds, and if all Tier 2 Bonds have been redeemed, Tier 3 Bonds) at a redemption price of 105% of the par value or 105% of the accreted value of such Bonds, plus accrued and unpaid interest thereon to the redemption date. At any time after the tenth anniversary of the effective date of the Plan, the Debtor may, from time to time, redeem any of the Tier 1 Bonds (and, if all Tier 1 Bonds have been redeemed, Tier 2 Bonds, and if all Tier 2 Bonds have been redeemed, Tier 3 Bonds), without premium or penalty, at a price of 100% of the par value or 100% of the accreted value of such Bonds, plus accrued and unpaid interest thereon to the redemption date.

- Remedies. To the extent the Debtor fails to make any payment required to be made in cash in respect of the Amended and Restated Bonds solely because the Net Revenues are

less than the Projected Net Revenues, the Trustee and the holders of the Amended and Restated Bonds (i) shall have the right to retain, or cause the Debtor to retain, (x) an independent consultant to recommend the optimum toll rates for the Southern Connector, on the terms and conditions set forth herein, and (y) a management consultant or other third party to examine and make recommendations regarding the Debtor's Operating Costs, and except to the extent holders of a majority of the aggregate principal amount of the Tier 1 Bonds object to the recommendations of such consultant or third party, the Debtor shall promptly implement all recommendations of such consultant or other third party to the extent within its power to do so; and (ii) shall not have the right to accelerate the maturity of the Amended and Restated Bonds or to foreclose on the Debtor's assets.

- Debt Service Reserve Fund: The Debtor shall maintain with the New Trustee an account or fund (the "Debt Service Reserve Fund") for the benefit of the holders of the Tier 1 Bonds (and, if all Tier 1 Bonds have been redeemed, the holders of the Tier 2 Bonds, and if all Tier 2 Bonds have been redeemed, the holders of the Tier 3 Bonds). The Debt Service Reserve Fund shall be funded on the effective date of the Plan with any proceeds of the Southern Connector Toll Road Revenue Bond Debt Service Fund and the Southern Connector Toll Road Revenue Bond Debt Service Reserve Fund (each as defined in the Original Trust Indenture) that are under the control of the Trustee as of the effective date of the Plan (the initial amount deposited in the Debt Service Reserve Fund being referred to herein as the "Debt Service Reserve Requirement"). If the New Trustee applies any amounts in the Debt Service Reserve Fund, the Debt Service Reserve Fund shall be fully replenished to the Debt Service Reserve Requirement before any payments or other distributions shall be made in respect of the Tier 2 Bonds or the Tier 3 Bonds, as applicable.

- Toll Rates: The New Trustee, as the collateral assignee of the Debtor under the Amended Trust Indenture, shall have the right to retain an independent consultant to recommend the optimum toll rates for the Southern Connector (i) one time between the first and second anniversaries of the effective date of the Plan, (ii) from time to time, but no more frequently than annually, (iii) if holders of a majority of the aggregate outstanding principal amount of the Tier 1 Bonds determine that Net Revenues may be inadequate to enable the Debtor to make any semi-annual payment required to be made in respect of the Amended and Restated Bonds, and (iv) if the Debtor fails to make any payment required to be made in respect of any of the Amended and Restated Bonds. In each case where an independent consultant is retained by the New Trustee pursuant to clauses (i), (iii) or (iv) of the immediately preceding sentence, (x) the independent consultant shall make its recommendation for the purpose of maximizing revenue generated by the Southern Connector to enable the Debtor to satisfy (to the maximum extent possible) its obligations under the Amended and Restated Bonds and the Amended Trust Indenture, (y) except to the extent holders of a majority of the aggregate principal amount of the Tier 1 Bonds object to the recommendations of such consultant, the Debtor shall use reasonable commercial efforts to cause SCDOT to promptly set all toll rates on the Southern Connector in accordance with all recommendations of such consultant, and otherwise to comply promptly with such recommendations, and (z) the New Trustee shall have the right to enforce the Debtor's rights under the License Agreement in respect of

14

such recommendations. Notwithstanding the foregoing, the final determination of Toll Rates will remain subject to the terms of the License Agreement.

## ARTICLE VIII

## EFFECTIVE DATE; MODIFICATION OF PLAN

### 8.1    Conditions Precedent to Confirmation

Confirmation of the Plan shall be conditioned on the Debtor's satisfaction of the requirements contained in Bankruptcy Code § 1129 to the extent provided in Bankruptcy Code § 901. Additionally, confirmation of this Plan shall not occur unless each of the following conditions precedent has occurred:

1. The Court shall have approved the Disclosure Statement by a Final Order; and

2. The Plan Documents shall be in form and substance satisfactory to the Debtor and the Senior Bonds Trustee; and

3. The Confirmation Order, in form and substance acceptable to the Debtor and the Senior Bond Trustee, shall have been entered by the Court; and

4. It has been determined that the Debtor is eligible for Chapter 9 relief and the Court enter an Order of Relief.

### 8.2.    Conditions Precedent to Effective Date

The following conditions precedent must be satisfied or waived as set forth herein on or prior to the Effective Date:

1. The Confirmation Order shall have been entered in form and substance reasonably satisfactory to the Debtor and the Senior Bonds Trustee, and shall, among other things, (i) provide for the distribution of the Amended and Restated Bonds, (ii) provide for the assumption of the License Agreement and find that there are no defaults requiring cure thereunder and (iii) provide that notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

2. The Court shall have entered an order or judgment declaring that (i) in the event there are insufficient Net Revenues to fund the Renewal and Replacement Fund in order to permit Debtor to pay the costs of the repair and replacement of the Southern Connector, SCDOT is obligated to repair, renew and replace the Southern Connector as part of the State Highway System and to advance the cost of such repair, renewal and replacement on an ongoing basis pursuant to the License Agreement and under general South Carolina law; (ii) that any failure by the Debtor to cause the repair, renewal and the replacement of the Southern Connector due to the insufficiency of toll revenues shall not give rise to a right of SCDOT to terminate the License Agreement; (iii) that Debtor's obligation to pay funds to SCDOT or to the Renewal and

15

Replacement Fund or to perform obligations under the License Agreement, the performance of which are subject to the availability of adequate Net Revenues from the operation of the Southern Connector, will not be considered to cause the Debtor to be in violation of Section 14.1(d) of the License Agreement and will not permit SCDOT to terminate the License Agreement under that section or otherwise; and (iv) that applicable law, including Section 12-28-2920 Code of South Carolina, 1976, as amended, does not require or permit SCDOT to remove the tolls from the Southern Connector or other cessation of tolls by virtue of the restructuring and transactions contemplated under the Plan, specifically including of the amendments to the Bonds effected by the Plan; and

       3.      The Confirmation Order shall not then be stayed, vacated or reversed; and

       4.      The Confirmation shall be a Final Order and no request for revocation of the Confirmation Order shall have been made or, if made, remain pending; and

       5.      The Amended Trust Indenture and Amended and Restated Bonds have been executed and delivered and the Trustee shall have (as a condition to acceptance of delivery of the Amended and Restated Bonds) received opinions of counsel acceptable to the Trustee, subject to customary assumptions and exceptions, to the effect that (A) the Amended and Restated Bonds and the Amended Trust Indenture and other bond documents have been duly authorized by the Debtor, have been validly executed and delivered by the Debtor, and represent the legal and binding obligations of Debtor under South Carolina law, enforceable in accordance with their terms, and (B) interest on the Amended and Restated Bonds is excludable from gross income of the owners thereof for federal and state of South Carolina income tax purposes and is not a specific item of tax preference for purposes of the federal alternative minimum tax..

**8.3**    **Waiver of Conditions to Effectiveness**

Each of the conditions set forth in Article VIII of the Plan may be waived in whole or in part by the Debtor and the Senior Bonds Trustee without notice to parties in interest or the Court and without a hearing.

ARTICLE IX

**CLAIMS ADMINISTRATION**

9.1    Except as otherwise provided in the Plan or the Confirmation Order, objections to Claims may be filed to any Claim in accordance with applicable law; ***provided, however, that objections to Claims shall be filed on or before the Effective Date or such objections shall be deemed waived***.

9.2    All Class 1 and Class 2 Claims shall be deemed filed and automatically allowed pursuant to the bondholder list maintained by the Senior Bonds Trustee and the Subordinate Bonds Trustee. All Class 1 and Class 2 Claims are undisputed and shall be deemed secured to the extent provided in the Original Trust Indenture. All Class 1 and Class 2 Claims shall be deemed filed and automatically allowed in an amount equal to unpaid principal plus accrued and unpaid interest as of the Effective Date, in accordance with the underlying bond documents.

16

9.3    The Debtor shall not object to the Class 3 Claims.

9.4    Any Claim for which a proof of Claim has been filed within any applicable period of limitation fixed by the Bankruptcy Court, or any Claim set forth on the List of Creditors, is deemed filed under Section 925 of the Bankruptcy Code, to which an objection is not filed by the Debtor within the time period set forth in Section 9.1 hereof, shall be deemed an Allowed Claim.

9.5    Unless otherwise provided in the Plan or the Confirmation Order, any Claim which is not deemed filed under Section 925 of the Bankruptcy Code and for which no proof of Claim has been timely filed shall not be treated as an Allowed Claim for purposes of voting or distribution under the Plan, whether or not an objection to such Claim is filed and such Claims(s) shall be barred and discharged upon the Effective Date.

## ARTICLE X

## **MISCELLANEOUS**

10.1    <u>Delivery of Instruments</u>.  All parties bound by this Plan shall execute or deliver all instruments required to be executed by the Plan.

10.2    <u>Headings</u>.  The headings used in this Plan are solely for the convenience of the reader and do not in any way limit, expand or modify the provisions of this Plan to which they refer.

10.3    <u>Automatic Stay</u>.  Nothing herein shall be deemed to modify or vacate the automatic stay of actions against the Debtor; provided however that the automatic stay shall terminate upon the Effective Date.

10.4    <u>Discharge</u>.  Upon the Effective Date, and the Debtor's performance of all obligations required by this Plan, the Debtor shall be discharged of all pre-Confirmation debts except as otherwise provided in this Plan.

10.5    <u>Disputed Claims</u>.  Notwithstanding any other provision of this Plan, a Disputed Claim shall be paid in accordance with the Plan only after the Court enters its Order on the Disputed Claim as an Allowed Claim and such Order has become a Final Order.

10.6    <u>Record Date</u>.  The Record Date for voting on the Plan is the date on which the Court approves the Disclosure Statement in accordance with Bankruptcy Code § 1125.  Persons entitled to vote on the Plan shall be determined by reference to: (i) the bond registrars' lists maintained by the Senior Bonds Trustee, the Subordinate Bonds Trustee, and DTC with only those named holders of the Bonds being entitled to vote on the Plan, (ii) affidavits submitted to the Debtor pursuant to Rule 3003(d) of the Bankruptcy Rules, and (iii) the List of Creditors filed by the Debtor pursuant to Bankruptcy Code 924.

10.7    <u>Releases</u>.  Notwithstanding any other provision of the Plan, each entity bound by receiving property or payment pursuant to the Plan on account of its Administrative Claims or

Allowed Claims, including but not limited to the holders of the Series 1998A, Series 1998B and Series 1998C Bonds, the Senior Bonds Trustee and Subordinate Bonds Trustee, shall be deemed to forever release, waive and discharge all known and unknown pre-confirmation Claims, debts, rights, causes of action, liabilities, offsets or defenses of any nature that such entity has, had or may have against the Debtor, its past and present directors, officers, employees, attorneys and other retained professionals other than Claims that arise under the Plan or after the Effective Date.  Notwithstanding any other provision of the Plan, the Debtor shall be deemed to forever release, waive and discharge all known and unknown pre-confirmation claims, debts, rights, causes of action, liabilities, offsets or defenses of any nature that it has, had or may have against the Bondholders, the Senior Bonds Trustee and the Subordinate Bonds Trustee, other than claims that arise under the Plan or after the Effective Date.  The Confirmation Order shall constitute an injunction against the prosecution, whether directly, derivatively or otherwise, of any pre-Confirmation Claim, debt, right, cause of action, liability, offset or defense released or to be released pursuant to this Section.

10.8   **Limitation of Liability**.  Except as otherwise provided in the Plan, none of the Plan Participants, acting in such capacity, shall either have or incur any liability to any entity for any violation of any applicable law, rule or regulation governing solicitation of acceptance or rejection of a plan for adjustment of debts or the offer, issuance, sale or purchase of securities arising from or relating to any act taken or omitted to be taken in connection with or related to the Debtor's Case, including any act taken or omitted to be taken in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, the Confirmation Order or any act taken or omitted to be taken in connection with any estimation, projection, evaluation or investigation undertaken or prepared in connection with the formulation of the Plan, the Disclosure Statement, or the Confirmation Order; provided, however, that the provisions of this section shall have no effect on the liability of any Plan Participant that would otherwise result from any such act or omission to the extent that such act or omission is determined to have been unauthorized or to have constituted gross negligence or willful misconduct.

10.9   **Injunction**.  Except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold pre-Effective Date Claims shall be permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such pre-Effective Date Claim against the Debtor, its past and present directors, officers, employees, attorneys and other retained professionals (collectively, "the Protected Parties") or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Protected Parties or their respective property with respect to such pre-Effective Date Claims; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Protected Parties or their respective property; and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Protected Parties with respect to any such pre-Effective Date Claim, except as otherwise permitted by section 553 of the Bankruptcy Code.

  10.10 <u>Retention of Rights.</u> The Senior Bonds Trustee, Subordinate Bonds Trustee and the Bondholders shall retain all of their respective rights and claims against SCDOT, including those arising under the License Agreement, Original Trust Indenture and any other related documents. Debtor does not contest and will not in any way oppose or interfere with the rights of the Senior Bonds Trustee to enforce for themselves, for the Bondholders, or by assignment from the Debtor, any such rights, claims or causes of action against SCDOT, including under the License Agreement, Original Trust Indenture and any other related documents.

  10.11 <u>Further Acts.</u> The Debtor is authorized to do and perform or cause to be done and performed, all such further acts and things and shall execute and deliver all such other agreements, instruments or documents as may be reasonably necessary to satisfy its obligations under the Plan.

**ARTICLE XI**

**<u>RETENTION OF JURISDICTION OF THE COURT</u>**

  Pursuant to Bankruptcy Code Section 945, following the Effective Date, the Bankruptcy Court shall retain sole and exclusive jurisdiction of the following:

  1. To resolve objections to Claims;

  2. Determination of all causes of action, controversies, disputes or conflicts, whether the subject of an action pending as of the Confirmation Date, between the Debtor and any other party, to the extent consistent with provisions of the Bankruptcy Code applicable to Chapter 9 cases;

  3. The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the Confirmation Order as may by necessary to carry out the purposes and intent of the Plan;

  4. The enforcement and interpretation of the terms and conditions of the Plan and the Plan Documents;

  5. The entry of any order, including injunctions, necessary to enforce any title, right and powers of the Debtor hereunder and to impose such limitations, restrictions and terms and conditions of such title, rights and powers as this Court may deem necessary;

  6. The entry of a temporary restraining order and/or a permanent injunction or other equitable relief against any party who, subsequent to the date of Confirmation, initiates a legal action, other than an appeal of the Confirmation Order to the United States District Court, in any court wherein such party asserts that the Plan is unenforceable or invalid in any respect;

  7. The entry of an order reopening this Case as may be necessary to the exercise of the exclusive jurisdiction set forth in this Article XI; and

8. The entry of a Final Decree.

                                      Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

**By:**   _s/Stanley H. McGuffin__
          Stanley H. McGuffin
          District ID No. 2833
          William H. Short, Jr.
          District ID No. 3831
          Lindsey Carlberg Livingston
          District ID No. 9518

Post Office Drawer 11889
Columbia, South Carolina 29211
(803) 779.3080 Tel
(803) 765.1243 Fax
smcguffin@hsblawfirm.com
bshort@hsblawfirm.com
llivingston@hsblawfirm.com

Attorneys for Debtor Connector 2000
Association, Inc.

October 22, 2010

20