**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

Case 10-04467-dd

**CONSENT ORDER ON SETTLEMENT AND COMPROMISE OF PROOF OF CLAIM NO. 14**

The relief set forth on the following page, for a total of 5 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/28/2011**



Entered: 03/29/2011

/s/ David R. Duncan

David R. Duncan
US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Connector 2000 Association, Inc.,<br><br><br><br>Debtor. | Case No. 10-04467-dd<br>Chapter 9<br><br>**CONSENT ORDER ON SETTLEMENT AND COMPROMISE OF PROOF OF CLAIM NO. 14** |

   This matter is before the court on the application of the Debtor Connector 2000 Association, Inc. ("Debtor") and U.S. Bank National Association, as successor Trustee (the "Senior Bonds Trustee") for the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998A and 1998B (the "Bonds") seeking approval of a Settlement and Release Agreement (the "Settlement and Release Agreement"), by and between the Debtor, the Senior Bonds Trustee and James W. Giddens, as Trustee for the SIPA Liquidation of the Business of Lehman Brothers Inc. ("LBI") in the SIPA Proceeding (as defined below) (the "SIPA Trustee"), a copy of which is attached hereto as Exhibit A, and the compromise and settlement set forth therein.

   As further set forth in the Settlement and Release Agreement, the dispute involves proof of claim No. 14 ("LBI Proof of Claim") filed by the SIPA Trustee against the Debtor in amount not less than $2,769,643, which claim is related to the termination and administration of a certain Master Repurchase Agreement and related documentation entered into on February 12, 1998, between the Debtor, LBI and the predecessor to the Senior Bonds Trustee (collectively, the "Master Repurchase Agreement"). Additionally, the Senior Bonds Trustee filed an omnibus customer proof of claim (the "SIPA Proof of Claim") in the proceeding commenced by LBI and being administered by the SIPA

Trustee in the United States Bankruptcy Court for the Southern District of New York under the Securities Investor Protection Act of 1970, designated as Case No. 08-01420 (JMP) (the "SIPA Proceeding"). The SIPA Proof of Claim relates to multiple claims asserted against LBI by the Senior Bonds Trustee, including as related to the Master Repurchase Agreement and the Debtor. The Debtor and the Senior Bonds Trustee have claimed consequential damages in the amount of $3,244,202.00 against LBI related to the termination of the Master Repurchase Agreement.

In connection with the termination of the Master Repurchase Agreement, the Senior Bonds Trustee recovered proceeds from the sale of certain of the securities that were the subject of the Master Repurchase Agreement and transferred approximately $1.2 million of those securities (the "Reserved Securities") to a suspense sub-account within the current senior debt service reserve fund for the Bonds as a reserve for any claim to the funds that might be asserted by the SIPA Trustee against the Debtor.

The Debtor and the Senior Bonds Trustee have informed the Court that the parties have settled this matter. Pursuant to the terms of the proposed settlement $800,000.00 will be paid to the SIPA Trustee. Upon receipt by the SIPA Trustee of the $800,000.00, the LBI Proof of Claim shall be deemed withdrawn with prejudice and disallowed on that basis. Additionally, the portion of the SIPA Proof of Claim related to the Debtor and the Master Repurchase Agreement will be deemed an allowed general creditor claim in the SIPA Proceeding in the amount of $2,000,000.00. For the avoidance of doubt, the parties acknowledge and agree that the Settlement and Release Agreement resolves only that portion of the SIPA Proof of Claim that relates to the Debtor and the Master Repurchase Agreement, and that the Settlement and Release Agreement shall not be deemed or

construed to impair or effect the other claims included in the SIPA Proof of Claim in any way. For avoidance of doubt all other determinations made by the SIPA Trustee to date regarding the SIPA Proof of Claim shall remain in full force and effect. The remainder of the Reserved Securities being held by the Senior Bonds Trustee in the suspense account will be removed from the suspense sub-account and remain in the current senior debt service reserve fund (and thereafter will be subject to effectiveness of the Debtor's proposed First Amended Plan of Adjustment (the "Plan") and the terms thereof). In the event the Plan goes effective prior to the effective date of the Settlement and Release Agreement, the remainder of the Reserved Securities will be transferred to the Senior Bonds Debt Service Reserve Subaccount of the Series 2011 Bonds Debt Service Reserve Account as described under the Amended Trust Indenture.[1] This settlement will resolve all claims by the parties relating to the administration and termination of the Master Repurchase Agreement.

The Debtor has advised the Court that it believes that this settlement is in its best interests and the best interests of the estate and its creditors, as it will close out the Master Repurchase Agreement, provide additional funds to the Senior Bonds Debt Service Reserve Subaccount of the Series 2011 Bonds Debt Service Reserve Account, and eliminate the risks and costs associated with any litigation of the Lehman Brothers Proof of Claim.

IT THEREFORE APPEARING that this settlement is in the best interest of the Debtor and the estate, and it further appearing that notice has been given to the creditors and parties in interest of the estate, and no objections thereto have been received, and

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan and the First Amended Disclosure Statement to the First Amended Plan for Adjustment of Debts, (the "Disclosure Statement") filed on January 17, 2011.

IT FURTHER APPEARING that the terms of the settlement have been noticed to creditors and parties in interest in accordance with Bankruptcy Rule 9019 and Local Rule 9019 and that no objections were filed to the proposed settlement, it is

ORDERED, ADJUDGED AND DECREED that the proposed settlement and the terms of the Settlement and Release Agreement are hereby approved.

Case 10-04467-dd    Doc 137    Filed 03/28/11    Entered 03/29/11 12:08:23    Desc Main
Document      Page 5 of 14

# EXHIBIT A

Case 10-04467-dd Doc 137 Filed 03/28/11 Entered 03/29/11 12:08:23 Desc Main
Document Page 6 of 14

EXECUTION COPY

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made and entered into as of this 2nd day of March, 2011, by and among James W. Giddens (the "SIPA Trustee"), as Trustee for Lehman Brothers Inc. ("LBI"), on the one hand and Connector 2000 Association, Inc. (the "Connector") and U.S. Bank National Association, as successor Trustee for the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998 (the "Connector Trustee") on the other hand. The SIPA Trustee, the Connector and the Connector Trustee are referred to individually herein as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on February 12, 1998, LBI, Connector, the predecessor Connector Trustee and/or certain collateral agents entered into a certain Master Repurchase Agreement and related documentation (collectively, the "Master Repurchase Agreement");

WHEREAS, on September 19, 2008 (the "Commencement Date"), a proceeding was commenced in the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court") under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI and the SIPA Trustee was appointed as trustee under SIPA to administer LBI's estate (the "LBI Estate") (Case No. 08-01420 (JMP), such proceeding, the "SIPA Proceeding") and succeeded to all rights, titles and interests of LBI and the LBI Estate;

WHEREAS, on December 12, 2008, the Connector Trustee transmitted to the SIPA Trustee a notice of event of default under the Master Repurchase Agreement;

WHEREAS, on December 29, 2008, the Connector Trustee liquidated certain of the securities that were the subject of the Master Repurchase Agreement (the "Securities");

WHEREAS, on January 29, 2009, U.S. Bank National Association filed an omnibus customer proof of claim in the SIPA Proceeding (the "SIPA Proof of Claim") relating to various transactions including claims in its capacity as Connector Trustee under the Master Repurchase Agreement;

WHEREAS, by letter dated November 2, 2009, the Connector Trustee provided the SIPA Trustee with a reconciliation of the liquidation of the Securities (i) showing an excess of gross proceeds of $1,167,175.11 over the repurchase price under the Master Repurchase Agreement and (ii) asserting consequential damages related to the Master Repurchase Agreement in the amount of $3,244,202;

WHEREAS, on June 24, 2010 (the "Connector Petition Date"), the Connector commenced a proceeding under chapter 9 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina (the "South Carolina Bankruptcy Court"), Case No. 10-04467-dd (the "Connector Bankruptcy Case");

WHEREAS, on September 22, 2010, the SIPA Trustee filed proof of claim No. 14 in the Connector Bankruptcy Case asserting a claim in an amount no less than $2,769,643 relating to the Master Repurchase Agreement (the "LBI Proof of Claim");

WHEREAS, pursuant and subject to SIPA, the SIPA Trustee has been duly appointed and authorized to liquidate the business of LBI including the unwind, close-out and reduction to cash of the amounts due the LBI Estate with respect to certain transactions including the Master Repurchase Agreement;

WHEREAS, on November 7, 2008, the New York Bankruptcy Court entered an order authorizing the SIPA Trustee to settle or compromise any claim with the approval of the Securities Investor Protection Corporation ("SIPC") and without further order of the New York Bankruptcy Court (Docket No. 241);

WHEREAS, on November 19, 2009, the New York Bankruptcy Court issued an Order approving and authorizing procedures to unwind, close-out and reduce to cash receivables owed by LBI trading counterparties (Docket No. 2078) (the "Unwind Order");

WHEREAS, pursuant to the Unwind Order, the SIPA Trustee is authorized to resolve transactions in which LBI is owed less than $3,000,000.00 without further approval of the New York Bankruptcy Court;

WHEREAS, on January 19, 2011, the South Carolina Bankruptcy Court approved a disclosure statement (the "Connector Disclosure Statement") with respect to a plan of adjustment filed by the Connector;

WHEREAS, the Connector Disclosure Statement indicates that, if the LBI Claim is not resolved consensually, the Connector intends to object to the allowance of the LBI Claim;

WHEREAS, the Parties desire to avoid the costs and uncertainties of litigation and consensually resolve all claims arising out of or otherwise relating to the administration and termination of the Master Repurchase Agreement and the LBI Proof of Claim and the SIPA Proof of Claim (solely to the extent it relates to the Master Repurchase Agreement);

WHEREAS, the SIPA Trustee has determined, in consultation with his professional advisors, that it would be in the best interests of the LBI Estate, its customers and creditors that the Master Repurchase Agreement be closed out subject to (i) the payment to the SIPA Trustee of $800,000.00 (the "Close-out Amount"), and (ii) the allowance of a general creditor claim (the "General Creditor Claim") against the LBI Estate in favor of the Connector Trustee in the amount of $2,000,000.00 (the "General Creditor Claim Amount"), in the manner and upon the terms as set forth herein and agreed among the Parties; and

WHEREAS, the Connector has determined, in consultation with its professional advisors, that it would be in the best interest of Connector and its creditors that the Master Repurchase Agreement be closed out as set forth above and in the manner and upon the terms as set forth herein;

WHEREAS, the Parties have negotiated in good faith concerning the rights of the Parties with respect to the Parties' interests in the Master Repurchase Agreement and claims related thereto and believe they have reached a fair and equitable and reasonable determination with respect to the Close-Out Amount and the General Creditor Claim Amount.

NOW, THEREFORE, in consideration of the mutual covenants set forth below, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES HERETO THAT:

1. The foregoing Recitals are true in all respects.

2. Settlement Effective Date. This Agreement shall become effective on the first date (the "Settlement Effective Date") that the South Carolina Bankruptcy Court shall have entered an order approving the terms of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and such order has become a final order, not subject to any appeal, certiorari or other review.

3. Close-Out Amount. Within seven (7) business days following the Settlement Effective Date, the Connector Trustee shall pay the SIPA Trustee cash in an amount equal to the Close-Out Amount by wire transfer to:

| Union Bank, N.A. Monterey Park, CA United States | |
|---|---|
| Swift: | BOFCUS33MPK |
| ABA Number: | 122-000-496 |
| Account Number | 37130196431 |
| Account Name: | TRUSDG |
| Beneficiary Name: | James W. Giddens, Trustee, LBI Funds Account |
| Beneficiary Account: | 6711860101 |

4. Withdrawal of Proof of Claim. Upon receipt by the SIPA Trustee of the Close-Out Amount, the LBI Proof of Claim is hereby and will be deemed withdrawn and dismissed with prejudice. The SIPA Trustee shall have no claim in the Connector Bankruptcy Case.

5. General Creditor Claim. Upon receipt by the SIPA Trustee of the Close-Out Amount, the Connector Trustee shall be deemed to hold an allowed general creditor claim in the General Creditor Claim Amount against LBI in connection with the SIPA Proceeding and such determination as to the portion of the SIPA Proof of Claim relating to Connector and the Master Repurchase Agreement shall be deemed final and non-appealable. For the avoidance of doubt, the parties acknowledge and agree that this Agreement resolves only that portion of the SIPA Proof of Claim that relates to the Connector and the Master Repurchase Agreement, and this Agreement shall not be deemed or construed to impair or effect the other claims included in the SIPA Proof of Claim in any way. All other determinations made by the SIPA Trustee to date regarding the SIPA Proof of Claim shall remain in full force and effect.

6. <u>Release by the SIPA Trustee</u>. Subject to, and in consideration for the receipt by the SIPA Trustee of the Close-Out Amount, the SIPA Trustee on behalf of LBI, the LBI Estate and on behalf of their respective predecessors, successors, beneficiaries and assigns, release and forever discharge the Connector, the Connector Trustee, as well as each of their respective predecessors, successors, beneficiaries and assigns, present and former parents, subsidiaries, affiliates, shareholders, officers, directors, employees, members, representatives and agents forever from any and all claims, actions, causes of action, suits, debts, damages, losses, obligations, demands, attorneys' fees, charges, fees, imposts, levies, assessments, duties, customs and liabilities whatsoever, whether known or unknown, billed or unbilled, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether past, present or future, both in law and in equity, in any way relating to the Master Repurchase Agreement, and the LBI Proof of Claim and the SIPA Proof of Claim (solely to the extent it relates to the Master Repurchase Agreement), other than claims arising under this Agreement.

7. <u>Release by the Connector and the Connector Trustee</u>. Subject to, and in consideration for the allowance of the General Creditor Claim and the withdrawal of the LBI Proof of Claim, the Connector and the Connector Trustee, on behalf of their respective predecessors, successors, beneficiaries and assigns, release and forever discharge the SIPA Trustee, SIPC, LBI and the LBI Estate, as well as each of their respective predecessors, successors, beneficiaries and assigns, present and former parents, subsidiaries, affiliates, shareholders, officers, directors, employees, members, representatives and agents forever from any and all claims, actions, causes of action, suits, debts, damages, losses, obligations, demands, attorneys' fees, charges, fees, imposts, levies, assessments, duties, customs and liabilities whatsoever, whether known or unknown, billed or unbilled, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether past, present or future, both in law and in equity, in any way relating to the Master Repurchase Agreement and the LBI Proof of Claim and the SIPA Proof of Claim (solely to the extent it relates to the Master Repurchase Agreement), other than claims arising under this Agreement.

8. <u>Trustee Exculpation</u>. U.S. Bank National Association is executing this Agreement solely in its capacity as Connector Trustee and not in its individual capacity. Neither U.S. Bank National Association in its respective individual capacity nor its respective officers, directors, shareholders, or agents shall be liable for any claim, liability, or obligation arising out of this Agreement.

9. <u>South Carolina Bankruptcy Court Approval</u>. Connector shall seek, and the Connector Trustee and the SIPA Trustee shall not oppose, approval of this Agreement from the South Carolina Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

10. <u>Reservation of Rights</u>. The Parties expressly reserve all of their rights and defenses with respect to any other claims that one Party may have against another, other than any claims in respect of or in connection with the Master Repurchase Agreement and the LBI Proof of Claim.

11. <u>No Third-Party Beneficiaries</u>. Except as otherwise specifically provided for herein, nothing contained in this Agreement shall create any rights, remedies, or defenses in favor of any party in interest that is not a Party to this Agreement.

12. <u>Binding Effect</u>. This Agreement shall be binding on, and inure to the benefit of, the Parties and their respective successors or assigns, including any subsequent trustee elected or appointed for LBI, or any successor trustee to the Connector Trustee.

13. <u>Counterparts</u>. This Agreement may be signed in counterparts which, when taken as a whole, shall constitute one and the same document; and faxed signatures shall be deemed originals.

14. <u>Amendments and Modifications</u>. This Agreement may not be amended or modified orally. Accordingly, no amendment to, or modification of, this Agreement shall be effective unless it is made in writing and signed by duly authorized representatives of each and every Party to this Agreement. The Parties agree and acknowledge that they will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

15. <u>Representations</u>.

    a. Each Party hereby represents and warrants to the other Party that: (i) it has the power and authority to execute this Agreement; (ii) neither the execution nor the performance of this Agreement by such Party violates any other contract by which such Party is bound; (iii) neither the execution nor the performance of this Agreement by such Party violates any charter, regulation, corporate resolution, by-law or other corporate restriction to which such Party is subject; and (iv) upon the Settlement Effective Date, this Agreement will constitute a valid and binding obligation of such Party, enforceable against such Party in accordance with its terms.

    b. Each Party hereby represents and warrants to the other Party that the person signing this Agreement on its behalf is duly authorized to enter into this Agreement on that Party's behalf and that no further consent or approval is required from or by any other person, party, or entity in order for such Party to enter into, or carry out, the provisions of this Agreement (subject to, in the case of the Connector, approval of the South Carolina Bankruptcy Court).

16. <u>Acknowledgement</u>. Each individual signing this Agreement on behalf of any Party hereto acknowledges and, with respect to his or her own signature below, warrants and represents that he/she is authorized to execute this Agreement in his/her representative capacity, as reflected below and on behalf of the Party indicated.

17. <u>No Admission</u>: Each Party expressly recognizes that the consideration set forth herein is given by each Party in settlement of contested matters, and that neither this Agreement, the consideration specified herein, the acceptance thereof nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of any Party. Neither this Agreement nor any action taken to comply with its provisions shall be

construed as, or used as, an admission of any fault, wrongdoing or liability whatsoever in this or any other matter.

18. <u>No Reliance</u>. Each Party acknowledges and represents that it has relied solely upon facts obtained from its own investigation, and upon advice of its own attorneys, in executing this Settlement Agreement, and that it has not relied upon any statement, promise or representation of any nature by the other Party, or counsel for any of the foregoing.

19. <u>No Assignment</u>. The Parties represent that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, corporation or other entity, any of the claims withdrawn, dismissed or released pursuant to this Agreement.

20. <u>Entire Agreement</u>: The Parties acknowledge that no promise, inducement, or agreement not stated here has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them with respect to the subject matter hereof.

21. <u>Choice of Law</u>. This Agreement, and its validity, interpretation and legal effect, shall be governed by and shall be interpreted in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code or SIPA apply (in which case the Bankruptcy Code or SIPA shall be applied to the extent applicable), without regard to New York's rules governing conflicts of laws.

22. <u>Jurisdiction</u>. Each Party hereby submits to the jurisdiction of the New York Bankruptcy Court and South Carolina Bankruptcy Court for any action, suit or proceeding to enforce this Agreement.

Dated: March 2, 2011

CONNECTOR 2000 ASSOCIATION, INC.

By: _____
Name: Peter Femia
Title: Executive Vice President/General Manager

By: _____
James B. Kobak, Jr.
Jeffrey S. Margolin

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

ATTORNEYS FOR JAMES W. GIDDENS, ESQ.,
AS TRUSTEE FOR THE SIPA
LIQUIDATION OF THE BUSINESS OF
LEHMAN BROTHERS INC.

construed as, or used as, an admission of any fault, wrongdoing or liability whatsoever in this or any other matter.

20. **No Reliance.** Each Party acknowledges and represents that it has relied solely upon facts obtained from its own investigation, and upon advice of its own attorneys, in executing this Settlement Agreement, and that it has not relied upon any statement, promise or representation of any nature by the other Party, or counsel for any of the foregoing.

19. **No Assignment.** The Parties represent that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person, corporation or other entity, any of the claims withdrawn, dismissed or released pursuant to this Agreement.

20. **Entire Agreement:** The Parties acknowledge that no promise, inducement, or agreement not stated here has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them with respect to the subject matter hereof.

21. **Choice of Law.** This Agreement, and its validity, interpretation and legal effect, shall be governed by and shall be interpreted in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code or SIPA apply (in which case the Bankruptcy Code or SIPA shall be applied to the extent applicable), without regard to New York's rules governing conflicts of laws.

22. **Jurisdiction.** Each Party hereby submits to the jurisdiction of the New York Bankruptcy Court and South Carolina Bankruptcy Court for any action, suit or proceeding to enforce this Agreement.

Dated: March 2, 2011

CONNECTOR 2000 ASSOCIATION, INC.

By: _____
Name: Peter Fennia
Title: Executive Vice President/General Manager

By: _____
James B. Kobak, Jr.
Jeffrey S. Margolin

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

ATTORNEYS FOR JAMES W. GIDDENS, ESQ.,
AS TRUSTEE FOR THE SIPA
LIQUIDATION OF THE BUSINESS OF
LEHMAN BROTHERS INC.

6

U.S. BANK NATIONAL ASSOCIATION, AS
SUCCESSOR TRUSTEE FOR CONNECTOR
2000 ASSOCIATION INC. TOLL ROAD
REVENUE BONDS (SOUTHERN CONNECTOR
PROJECT, GREENVILLE, SOUTH CAROLINA)
SERIES 1998

By: *Susan Jacobsen*
Name: Susan Jacobsen
Title: Vice President