## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

Case 10-04467-dd

## ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN FOR ADJUSTMENT OF DEBTS PURSUANT TO CHAPTER 9 OF THE BANKRUPTCY CODE

The relief set forth on the following page, for a total of 41 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**04/01/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 04/01/2011

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | Case No. 10-04467-dd |
| | Chapter 9 |
| Connector 2000 Association, Inc., | |
| Debtor. | |

### ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN FOR ADJUSTMENT OF DEBTS PURSUANT TO CHAPTER 9 OF THE BANKRUPTCY CODE

This matter is before the Court for confirmation of Connector 2000 Association, Inc.'s ("Debtor") chapter 9 plan ("Plan"). Thomas Stoeckmann filed an Objection to Confirmation of Debtor's Plan on March 11, 2011. A hearing was held on Debtor's Plan on March 25, 2011. Based on the findings of fact and conclusions of law stated on the record at the hearing and set forth in further detail below, Debtor's chapter 9 Plan is confirmed.

### HISTORY AND BACKGROUND OF DEBTOR

The Debtor, formed in 1996, is a South Carolina nonprofit corporation organized as a "public benefit corporation" under the South Carolina Nonprofit Corporation Act of 1994, as amended. The Debtor was formed to assist the South Carolina Department of Transportation ("SCDOT") in the financing, acquisition, construction, and operation of turnpikes, highway projects, and other transportation facilities.

In 1996, Debtor entered into a license agreement (the "License Agreement") with the South Carolina Department of Transportation ("SCDOT") to finance, acquire, construct, and operate an approximately 16 mile toll highway (the "Southern Connector") and related roadways. The License Agreement extends for a period of 50 years.

To finance the Southern Connector, the Debtor issued $200,177,680 original principal

amount of Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998A, B and C (the "Bonds") on February 11, 1998 to finance the construction of the Southern Connector. At the time the Bonds were issued, a traffic and revenue study estimated the future utilization of the road and toll revenues and operating expenses of the Debtor.  The actual traffic on the highway and toll revenues received by the Debtor have been substantially less than projected.  Debtor does not receive sufficient toll revenues to pay debt service on the bonds.  Prior to January 1, 2010, such shortfalls had been covered by withdrawals from reserve accounts maintained by the trustee under the trust indenture.  On January 1, 2010 the Debtor defaulted in the payment of principal and interest on the bonds.

Previously, the Debtor had engaged a traffic and revenue consultant to prepare a series of toll rate studies to advise the Debtor regarding the toll rates necessary to maximize toll revenue from the Southern Connector.  Each such study concluded that, even if the recommendations of the consultant are effected, projected toll revenues would be insufficient to pay principal and interest on the Bonds in full.   Efforts to negotiate a financial accommodation or find a legislative solution through an extension of the term of the License Agreement failed.  Debtor turned to chapter 9 of the Bankruptcy Code seeking relief.

## DEFINITIONS

The Court has adopted certain definitions from Debtor's Plan and Disclosure Statement to aid in interpreting this order such that the meaning of the terms are consistent between the Plan, Disclosure Statement, and Order.  The definitions adopted by the Court are the following:

1. "Allowed Claim" shall mean any prepetition Claim against the Debtor, proof of which was filed on or before the Bar Date, or any Claim that appears in the List of

Creditors filed by the Debtor and which is not listed by the Debtor as disputed, contingent, or unliquidated as to amount, and, in either case, a Claim as to which no objection as to the allowance thereof has been interposed by the Debtor on or before 60 days after the Effective Date or, if such objection has been interposed, on the date which there has been entered a Final Order allowing such Claim; provided, however, that the Claims represented by the Bonds are deemed Allowed Claims, without duplication and without the need to file a proof of claim.

2. "Allowed Administrative Claim" shall mean any right to payment constituting a cost or expense of administration of the Case allowed under Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

3. "Amended and Restated Bonds" shall collectively mean the Series 2011A Bonds, Series 2011B Bonds, and Series 2011C Bonds, the material terms and conditions of which will be set forth in the Amended Trust Indenture and filed with the Bankruptcy Court as part of the Plan Supplement.

4. "Amended Trust Indenture" shall mean the Original Trust Indenture as modified and amended in connection with the Plan.

5. "Bankruptcy Code" shall mean Title 11 of the United States Code, as amended.

6. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of South Carolina.

7. "Bonds" shall collectively mean the Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), Series 1998A, 1998B and 1998C issued on February 11, 1998 pursuant to the Original Trust Indenture, to finance the

construction of the Southern Connector, including Capital Appreciation Bonds, Senior Bonds and Subordinate Bonds as defined below.

8. "Bondholders" shall mean beneficial owners of the Bonds or the Amended and Restated Bonds, as applicable.

9. "Case" shall mean the Debtor's Chapter 9 bankruptcy case, captioned *In re Connector 2000 Association, Inc.*, Chapter 9 Case No. 10-04467-DD.

10. "Claim(s)" shall mean Claim as defined in 11 U.S.C. §101(5).

11. "Commencement Order" shall mean the order the Court entered on June 28, 2010 entitled Amended Order Upon Commencement of Chapter 9 Case Establishing Certain Deadlines and Notice of Commencement of Case, of the Automatic Stay and of the Order for Relief.

12. "Confirmation" shall mean the entry by the Court of an order confirming the Plan in accordance with Section 943 of the Bankruptcy Code.

13. "Confirmation Order" shall mean that order entered by the Court confirming the Plan in accordance with Section 943 of the Bankruptcy Code.

14. "Debtor" shall mean Connector 2000 Association, Inc.

15. "Disclosure Statement" shall mean First Amended Disclosure Statement to the First Amended Plan for Adjustment of Debts, as modified, supplemented and amended, which is the disclosure document describing the Plan which was filed by the Debtor, approved by the Court, and distributed to the various Classes under the Plan as provided in Section 901 and 1125 of the Bankruptcy Code.

16. "Effective Date" shall mean that date upon which all of the covenants and conditions contained in Article VII of the Plan have been satisfied, which shall occur on or

before sixty (60) days from entry of the Confirmation Order or such other date as extended by order of the Court.

17. "Final Decree" shall mean the order of the Court entered after the Effective Date and after the Case is fully administered, closing the Case.

18. "Goldman" shall mean Goldman Sachs & Co.

19. "Lehman Brothers" shall mean Lehman Brothers, Inc.

20. "License Agreement" shall mean the document entitled "License Agreement by and between South Carolina Department of Transportation, an agency of the State of South Carolina ("SCDOT") and Connector 2000 Association, Inc. A South Carolina Non-profit Corporation ("Association") Dated February 11, 1998," whereby SCDOT granted the Debtor rights and obligations to finance, acquire, construct, and operate an approximately 16 mile fully controlled access toll highway known as the Southern Connector and to construct the South Carolina Highway 153 Extension.

21. "Net Revenues" shall mean, for any Fiscal Year preceding a Bond Payment Date, the Revenues received in such Fiscal Year less the Operating Costs paid in such Fiscal Year.

22. "New License Agreement" shall mean the License Agreement as amended by the First Amendment to the License Agreement being executed in connection with the Plan.

23. "New Waterfall" shall mean the schedule and priorities for distribution by the New Trustee of funds in the Revenue Fund in accordance with the terms of the Amended Trust Indenture and the Plan.

24. "Original Trust Indenture" shall collectively mean the Master Indenture of Trust and a First Supplemental Indenture of Trust, each dated as of February 1, 1998 between the Debtor and First Union National Bank, as predecessor in trust to U.S. Bank National Association, as trustee, pursuant to which the Bonds were issued to finance the construction of the Southern Connector, and the Second Supplement.

25. "Petition Date" shall mean June 24, 2010, the date on which the Debtor filed its petition under Chapter 9 of the Bankruptcy Code.

26. "Plan" shall mean the First Amended Plan filed by Debtor dated November 23, 2010, and as it may be amended.

27. "Plan Releasee(s)" shall mean any person or entity that is released from the claims of or liabilities to any creditor or party in interest pursuant to the Plan.

28. "Projected Net Revenues" shall mean (i) projected revenues for the Southern Connector for the relevant year, as set forth in Figure 4.4.2 of the Traffic and Revenue Report for Southern Connector dated May 4, 2009, prepared by Stantec Consulting Services Inc., less (ii) the reorganized Debtor's projected Operating Costs for such year, as determined by increasing the aggregate amount of expenses set forth in the Debtor's Annual Budget for 2010 (less certain extraordinary expenses) by 3.0% per annum for each year after 2010.

29. "Revised Traffic Study" shall mean the May 4, 2009 Traffic and Revenue Study prepared by Stantec Consulting Services, Inc.

30. "SCDOT" shall mean the South Carolina Department of Transportation, acting as agent of the State of South Carolina.

31. "Senior Bonds" means Bonds of a Series that are designated under the Amended Trust Indenture or in a Supplemental Indenture as Senior Bonds, as well as any Subordinate Bonds that become Senior Bonds, as provided herein. The Series 2011A Bonds are a Series of Senior Bonds.

32. "Senior Bonds Trustee" shall mean U.S. Bank National Association, as the Trustee for the Senior Bonds.

33. "Series 1998A Bonds" shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $66,200,000 original principal amount of Senior Current Interest Bonds, Series 1998A.

34. "Series 1998B Bonds" shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $87,385,622 original principal amount of Senior Capital Appreciation Bonds, Series 1998B.

35. "Series 1998C Bonds" or "Subordinate Bonds" shall mean the Connector 2000 Association, Inc. Toll Road Revenue Bonds (Southern Connector Project, Greenville, South Carolina), $46,592,058 original principal amount of Subordinate Capital Appreciation Bonds, Series 1998C.

36. "Series 2011A Bonds" shall mean the Amended and Restated Bonds consisting of approximately $126,903,926 aggregate original principal amount of Series 2011A Bonds which will be senior secured capital appreciation bonds, consisting of serial bonds maturing January 1 of the years 2012 through 2022 (inclusive) and three term

bonds, each subject to mandatory sinking fund redemption, maturing January 1, 2032, January 1, 2042 and July 22, 2051.

37. "Series 2011B Bonds" shall mean the Amended and Restated Bonds consisting of approximately $21,086,245 aggregate original principal amount of Series 2011B Bonds which will be senior subordinated secured capital appreciation bonds consisting of two term bonds, each subject to mandatory sinking fund redemption, maturing January 1, 2032 and July 22, 2051.

38. "Series 2011C Bonds" shall mean the Amended and Restated Bonds consisting of approximately $2,160,479 aggregate original principal amount of Series 2011C Bonds which will be junior subordinated secured capital appreciation term bonds bearing interest at 10.0% per annum, maturing, subject to mandatory sinking fund redemption, on July 22, 2051.

39. "Southern Connector" shall mean the sixteen-mile, four-lane toll highway south of the City of Greenville that connects the I-85/I-185 interchange (exit 42) with the I-385/U.S. 276 interchange (exit 30) which is owned by SCDOT and operated by the Debtor under the License Agreement.

40. "State" shall mean the State of South Carolina, acting through its agent SCDOT.

41. "Subordinate Bonds Trustee" shall mean HSBC Bank USA, N.A., the trustee for the Subordinate Bonds appointed under the Second Supplement.

### ELIGIBILITY OF DEBTOR

11 U.S.C. § 109(c) provides that an entity may be a chapter 9 debtor only if it is an insolvent municipality which is specifically authorized to be a chapter 9 debtor under state law and which "desires to effect a plan to adjust such debts." Section 109(c) also requires that a

potential debtor meet one of several requirements with respect to its creditors.  Section 101(40)

defines a "municipality" as a "political subdivision or public agency or instrumentality of a

State."  Thus, in order to be a debtor under chapter 9, Debtor must be insolvent, must meet

section 101(40)'s definition of municipality, and must be authorized under state law to be a

chapter 9 debtor.

As explained above, Debtor is insolvent and has proposed a plan to reorganize its debts.

Debtor can also meet the other requirements of section 109(c). In *Ex parte York Co. Natural Gas

Auth.*, 238 F. Supp. 964, 976 (D.C.S.C. 1965), the Court stated that the test for whether an entity

was eligible for chapter 9 was "whether the authority or agency is subject to control by public

authority, state or municipal." Although that case was decided under the former Bankruptcy Act,

the test it utilizes is still instructive in the determination of whether an entity qualifies as a

municipality.  Debtor qualifies as a municipality for purposes of the Bankruptcy Code.  SCDOT

has significant control over Debtor and in fact, Debtor was formed to assist the SCDOT with the

financing, design, construction, and all other aspects of the Southern Connector.  Debtor

qualifies as a municipality under section 101(40).

Additionally, Debtor is authorized under South Carolina law to be a chapter 9 debtor.

Section 6-1-10 of the South Carolina Code of Laws provides:

> [A]ll appropriate powers are hereby conferred upon, any . . . municipal
> corporation . . . to institute any appropriate action and in any other respect to
> proceed under and take advantage of and avail itself of the benefits and privileges
> conferred, and to accept the burdens and obligations created, by any existing act
> of the Congress of the United States and any future enactment of the Congress of
> the United States relating to bankruptcy.

Because the Court has determined Debtor is a municipality, S.C. Code § 6-1-10 specifically

authorizes it to file bankruptcy.  Debtor meets this requirement of section 109(c).

Finally, section 109(c)(5) requires a potential chapter 9 debtor to meet one of several alternatives relating to pre-petition workout attempts. Debtor has done so here. Section 109(c)(5)(C) provides that a debtor can only be a chapter 9 debtor if it "is unable to negotiate with creditors because such negotiation is impracticable." In Debtor's case, the number of bondholders is so large that it would be impossible for Debtor to have any type of negotiation with them, given that Debtor also does not even know the identity of the beneficial holders of the bonds. Debtor meets all the requirements of section 109(c) and is eligible to be a chapter 9 debtor.

<h3 style="text-align:center">CONFIRMATION OF DEBTOR'S PLAN</h3>

Debtor having:

a.      on June 24, 2010 (the "Petition Date"), filed its voluntary petition for relief under Chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court");

b.      published the Notice of Commencement of Chapter 9 Case ("Commencement Order") on June 30, 2010, July 7, 2010, and July 14, 2010 in *The Greenville News, The State,* and *The Bond Buyer*, as evidenced by the Affidavits of Publication filed on August 10, 2010 [Docket No. 53];

c.      filed, on October 22, 2010, a plan and a disclosure statement;

d.      filed, on November 23, 2010, a First Amended Disclosure Statement and First Amended Plan for Adjustment of Debts, both of which were thereafter supplemented, modified and amended on January 17, 2011 with various exhibits [Docket Nos. 108, 110] and on March

---

[1] Further references to the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) may be by section number only.

16, 2011, with respect to the Plan only [Docket No. 129] (as such, the "Disclosure Statement" and "Plan", respectively);

      e.      distributed solicitation materials beginning January 28, 2011, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the District of South Carolina Local Bankruptcy Rules (the "Local Bankruptcy Rules"), and the Order (I) Scheduling Hearing on Confirmation of the First Amended Plan for Adjustment of Debts; (II) Approving Solicitation Procedures; (III) Establishing Deadlines; and (IV) Approving Form and Manner of Notice of the Confirmation Hearing, entered on January 21, 2011 [Docket No. 113] (the "Solicitation Procedures Order"), as evidenced by the Affidavit of Service of Solicitation Materials filed by the Solicitation Agent on February 24, 2011 [Docket No. 117];

      f.      distributed the required solicitation documents on February 25, 2011, to certain other non-voting parties in accordance with the Solicitation Procedures Order as evidenced by the Certificates of Service filed on February 28, 2011 [Docket Nos. 118, 119];

      g.      published the Amended Notice of (A) Hearing to Confirm Debtor's First Amended Plan for Adjustment of Debts; (B) Objection and Voting Deadlines; and (C) Solicitation and Voting Procedures ("Amended Confirmation Hearing Notice") on February 16, 2011 in the *Wall Street Journal, The Greenville News,* and *The State*, as evidenced by the Affidavits of Publication filed on March 9, 2011 [Docket Nos. 124, 125, 126];

      h.      published the Order for Relief in *The State*, *The Greenville News*, and *The Bond Buyer,* as required by Bankruptcy Code § 923, as evidenced by the Affidavits of Publication filed on March 2, 2011 [Docket Nos. 120, 121, 122];

      i.      filed, on March 11, 2011, Debtor's Ballot Tally and the Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of

Ballots Accepting and Rejecting the First Amended Plan for Adjustment of Debts [Docket No. 127] ("Ballot Tally"), detailing the results of the Plan voting process; and

j.      filed, on March 18, 2011, the Debtor's Memorandum in Support of Confirmation of the Plan [Docket No. 132] ("Plan Confirmation Brief").

The Bankruptcy Court having:

a.      entered, on January 12, 2011, an Order for Relief granting Debtor relief under Chapter 9 of the Bankruptcy Code [Docket No. 103] subject only to terms of the Bankruptcy Court's Order entered on December 16, 2010, and the reservation of rights set forth therein in favor of SCDOT [Docket No. 94];

b.      conducted a hearing on the Disclosure Statement on January 5, 2011 and approved the Disclosure Statement by Order dated January 19, 2011 [Docket No. 112];

c.      entered the Solicitation Procedures Order on January 21, 2011 [Docket No. 113];

d.      set March 25, 2011 at 10:00 a.m., prevailing Eastern Time, as the date and time for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing");

e.      reviewed the Plan, the Disclosure Statement, the Plan Confirmation Brief, the SCDOT Joinder to the Plan Confirmation Brief, the Ballot Tally and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan under the Bankruptcy Code ("Confirmation"), including all objections, statements and reservations of rights;

f.      heard the statements, arguments and objections made by counsel in respect of Confirmation;

g.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation;

h.      overruled any and all objections to the Plan and Confirmation thereof; and

i.      taken judicial notice of the papers and pleadings filed in this Chapter 9 Case.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party-in-interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue.**

1.      The Bankruptcy Court has jurisdiction over this Chapter 9 case pursuant to 28 U.S.C. § 1334. Venue in the Bankruptcy Court was and is proper under 28 U.S.C. §§ 1408 and 1409. The Debtor is an entity eligible for relief under Bankruptcy Code § 109(c). Confirmation of the Plan constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.    Judicial Notice.**

2.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) such adjudicative facts that arise from the docket of this Chapter 9 case, including all pleadings and other documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the

Bankruptcy Court during the pendency of this case. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements and reservations of rights are hereby overruled on the merits.

**C.      Burden of Proof.**

3.      Debtor has met its burden of satisfying the confirmation requirements of § 943(b) by a preponderance of the evidence, which is the applicable evidentiary standard. *See In re Pierce County Hous. Auth.*, 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009); *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 31 (Bankr. D. Colo. 1999).

**D.      Notice, Solicitation and Acceptance.**

4.      On January 19, 2011, the Bankruptcy Court approved the Disclosure Statement as containing adequate information in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.  Thereafter, on January 21, 2011, the Bankruptcy Court entered the Solicitations Procedures Order which (a) fixed January 5, 2011 as the Record Date (as defined in the Solicitation Procedures Order), (b) set March 4, 2011 as the Voting Deadline for voting to accept or reject the Plan, (c) fixed March 16, 2011, as the deadline for objecting to the Plan, (d) fixed March 25, 2011 at 10:00 a.m. prevailing Eastern Time as the date and time for the commencement of the Confirmation Hearing, and (e) approved the form and method of notice of the Confirmation Hearing set forth therein.

5.      As evidenced by the Affidavit of Service of Solicitation Materials filed by the Solicitation Agent, the Affidavits of Publication, and the Certificates of Service filed by the Debtor, due, adequate and sufficient notice of the Disclosure Statement, Plan and exhibits thereto, together with all deadlines for voting on or objecting to the Plan and the transactions

contemplated thereby, has been given to: (a) all  classes of creditors entitled to vote on the Plan (b) parties that requested notice, and (c) all other parties as provided in the Solicitation Procedures Order, in substantial and material compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is necessary or shall be required.

6.      Based on the record, the Debtor and its respective directors, officers, employees, managers, attorneys, affiliates, agents and professionals (including but not limited to their attorneys, financial advisors, investment bankers, accountants, solicitation agents and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Solicitation Procedures Order and applicable non-bankruptcy law in connection with all of their respective activities relating to the tabulations and solicitation of acceptances or rejections of the Plan and their participation in the other activities described in Bankruptcy Code § 1125, and thus are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Article V of the Plan. The Debtor and its respective present and former officers, directors, employees, advisors, attorneys, and agents did not solicit the acceptance or rejection of the Plan by any holders of claims prior to the approval and transmission of the Disclosure Statement. In addition, all procedures used to distribute solicitation packages to holders of claims were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations. Such transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, those classes that were not entitled to vote to accept or reject

the Plan were provided with certain non-voting materials approved by the Bankruptcy Court in compliance with the Solicitation Procedures Order.

7.      In addition, the Debtor and its respective officers, directors, and employees, and their respective advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of securities (including the Amended and Restated Bonds) under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.  The Senior Bonds Trustee and its respective officers, directors, and employees, and their respective advisors, attorneys and agents also shall be entitled to the protections of the foregoing sentence with regard to any activities of the Senior Bonds Trustee (in its capacity as such or as the New Trustee) related to the Plan or the exchange of the Bonds for the Amended and Restated Bonds.

8.      Prior to the Confirmation Hearing, the Debtor filed the Ballot Tally. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations.

**E.      Fed. Bankruptcy Rule 3016.**

9.      The Plan is dated and identifies the parties submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).  The Plan and Disclosure Statement

describe in specific and conspicuous language all acts to be enjoined and identify the entities that would be subject to the injunction, therefore Bankruptcy Rule 3016(c) is satisfied.

**F.    Confirmation Requirements of Section 943(b) are Satisfied.**

10.    As set forth in further detail below, the Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including Bankruptcy Code § 943(b).

**G.    Section 943(b)(1) is Satisfied.**

11.    Section 943(b)(1) requires as the first condition to confirmation that the plan comply with the provisions of the Bankruptcy Code made applicable by §§ 103(f) and 901. Section 901(a) incorporates, among other things, the plan confirmation requirements of §§ 1129(a)(2), (a)(3), (a)(6), (a)(8), (a)(10), (b)(1), (b)(2)(A), and (b)(2)(B).    Debtor's Plan complies with each of these confirmation requirements.

a.    <u>Debtor Has Complied with § 1129(a)(2).</u>

Section 1129(a)(2) requires that the proponent of the plan comply with the applicable provisions of title 11.   In a chapter 9 case, the particular provisions that require compliance by Debtor in connection with administration of the case and confirmation of the plan are the provisions of § 1125, which require that the court approve a disclosure statement containing adequate information before acceptances or rejections of a plan may be solicited.   By Order dated January 19, 2011, the Bankruptcy Court approved Debtor's Disclosure Statement. Section 1129(a)(2) is satisfied here.

b.    <u>Section 1129(a)(3) is Satisfied as Debtor's  Plan is Proposed in Good Faith by Lawful Means.</u>

Section 1129(a)(3) requires that the plan be "proposed in good faith and not by any means forbidden by law". In this case, the Plan affords all creditors the potential for the greatest economic return from Debtor's assets. Debtor has disclosed all material information and is using chapter 9 to restructure its debts and provide its creditors the potential for the greatest economic return from Debtor's assets. Section 1129(a)(3) is satisfied here. The Plan is the product of an arms-length, good faith negotiation between Debtor, certain bondholders, the bond trustees, and SCDOT.

      c.      <u>Section 1129(a)(6) is Satisfied as the Applicable Regulatory Approvals Have Been Obtained.</u>

On December 1, 2010, the Commission of the SCDOT ("Commission") entered a resolution approving the terms of a settlement agreement on various issues. Thereafter, on December 2, 2010, the Commission amended their December 1, 2010 action, to provide authorization to the Secretary of Transportation to take the actions necessary to implement the settlement agreement reached, which terms are embodied in the Plan. Additionally, on February 17, 2011, the Commission entered a resolution approving the issuance and delivery of Amended and Restated Bonds and approving the execution and delivery of the New License Agreement by the SCDOT to Debtor. There are no other regulatory pre-conditions to the implementation of the Plan. Section 1129(a)(6) is satisfied.

      d.      <u>The Plan Has Been Accepted by Each Class of Claims Impaired under Plan as Required under § 1129(a)(8).</u>

Section 1129(a)(8) of chapter 11 requires as a condition to confirmation that the plan has been accepted by each class of claims or interests that is impaired under the plan. Acceptance of a plan by a class is determined by the standards set in § 1126(c) which requires that, of the votes

submitted, "at least two thirds in amount and more than one-half in number of the allowed claims" accept a proposed plan. In this case, impaired Classes 1, 2 and 4 affirmatively accepted the Plan in accordance with the voting standards of § 1126(c). Classes 5 and 6 did not submit any ballots. However, it appears that there are no open claims within these classes. All contracts and leases of Debtor which constituted potential executory contracts or unexpired leases as of the Petition Date were assumed except for a contract with Goldman Sachs & Co. ("Goldman Contract"), which was terminated by the Debtor prepetition and listed only as a potential executory contract being specifically rejected under the Plan to eliminate the possibility of any assertion by Goldman of subsequent claims under the Goldman Contract.

Class 6 consists of the claim of Lehman Brothers. However, since the filing of the Plan, Debtor and Lehman have reached an agreement with respect to its claim. No objection to the settlement was filed and by separate Consent Order On Settlement and Compromise of Proof of Claim No. 14, Lehman's claim is deemed withdrawn with prejudice and disallowed.

Therefore, all impaired classes have accepted the Plan. Since section § 1129(a)(8) is satisfied here, the "cramdown" provisions of § 1129(b) do not need to be analyzed in this case.

    e.    One Impaired Class Has Accepted the Plan as Required by § 1129(a)(10).

Under § 1129(a)(10), the court may confirm the plan only if, should any class of claims be impaired under the plan, at least one impaired class has accepted the plan. In this case, impaired Classes 1 (Senior Bond Claims), 2 (Subordinate Bond Claims), and 4 (SCDOT Claims) affirmatively and overwhelmingly accepted the Plan. Accordingly, § 1129(a)(10) is satisfied.

**H.    Debtor Complies with all Chapter 9 Provisions as Required by § 943(b)(2).**

    12.    Section 943(b)(2) requires as a condition to confirmation that the plan comply with the provisions of chapter 9. The major requirements that are directed toward the plan in a

chapter 9 case are those provisions of chapter 11 that are made applicable in chapter 9 cases by § 901(a).  These requirements are satisfied in this case as described above.

13.    The only other provisions of chapter 9 which are directed toward the plan are § 941, requiring that the plan be proposed and filed by the debtor, and § 942, governing modifications of the plan.  Debtor has proposed and filed the Plan, satisfying § 941.  On March 16, 2011, Debtor filed a modification to the Plan ("Modification") to make certain conforming and typographical changes to the Plan as specifically outlined in the Modification.  The Plan, as modified by the Modification, does not materially alter or otherwise change the Plan and meets the requirements of chapter 9.  Section 942 is satisfied, as is Section 943(b)(2).

**I.    Debtor has Disclosed Payments for Services and Expenses to be Paid in accordance with § 943(b)(3).**

14.    Section 943(b)(3) requires that all amounts to be paid by the Debtor or other persons for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable.  Debtor has been paying its administrative expenses in the case on a current basis and any open amounts are expected to be paid within 10 days of the Effective Date of the Plan.  Debtor, the Senior Bonds Trustee and the Subordinate Bonds Trustee have been currently paying amounts due to their service providers and professionals during the pendency of the case.  Because the foregoing amounts have been kept current, the only open amounts expected to be paid as of confirmation will be amounts due because of administrative lag time (which amounts are to be determined) and amounts to be paid incident to the issuance of the Amended and Restated Bonds and the related actions incident to effectuating the Plan.  The additional amounts to be paid or reimbursed incident to the Plan in connection with confirmation and the transactions contemplated by the Plan, including exchange of the Bonds for the Amended and

Restated Bonds, are reasonable and necessary to effectuate the Plan and have been fully

disclosed in Exhibit D to the Plan Confirmation Brief and on the record at the Confirmation

Hearing.  Section 943(b)(3) is satisfied here.

**J.      Debtor is Authorized to Take Actions Proposed in the Plan as Required by § 943(b)(4).**

15.    Section 943(b)(4) prevents the court from confirming any plan that requires the

debtor to take any action prohibited by law.   On January 19, 2011, the Debtor's Board of

Directors adopted a resolution authorizing Debtor to do the acts authorized and directed to effect

the consummation of the adjustment of Debtor's debts as provided in the Plan, including issuing

and delivering the Amended and Restated Bonds, executing the New License Agreement, and

executing the Amended Trust Indenture.   Additionally, Debtor requested that the Commission

approve the issuance and delivery of the Amended and Restated Bonds to allow the interest on

the Amended and Restated Bonds to be excluded from gross income for federal income tax

purposes, which the Commission approved by Resolution dated February 17, 2011.   Debtor is

not otherwise prohibited by law from taking any action necessary to carry out the Plan, and

Section 943(b)(4) is satisfied here.

**K.      All Administrative Claims have been Paid as Required by § 943(b)(5).**

16.    As another confirmation requirement, § 943(b)(5) provides that the court must

determine that the plan provides for the payment in full of all claims entitled to administrative

expense priority.    Throughout the course of the Chapter 9 Case, Debtor has satisfied

administrative expenses as they became due.   Accordingly, it appears all Claims that otherwise

would constitute Allowed Administrative Claims previously have been or will be satisfied in the

ordinary course of business prior to or within ten (10) days of the Effective Date of the Plan, by

Debtor.  Section 943(b)(5) is satisfied in this Case.

**L.      SCDOT Has Expressly Approved the Plan Settlement and New License Agreement Satisfying § 943(b)(6).**

17.    Section 943(b)(6) requires regulatory or electoral approval for any action to be

taken under the plan that would require such approval in the absence of the chapter 9 case.  As

described above, on December 1, 2010, the Commission entered a resolution approving the

terms of a settlement agreement on various issues.  Thereafter, on December 2, 2010, the

Commission amended their December 1, 2010 action, to provide authorization to the Secretary

of Transportation to take the actions necessary to implement the settlement agreement reached,

which terms are embodied in the Plan.  *See* Exhibit B to the Plan Confirmation Brief.

Additionally, on February 17, 2011, the Commission entered a resolution approving the

issuance and delivery of Amended and Restated Bonds and approving the execution and

delivery of the New License Agreement by the SCDOT to Debtor subject to the Plan being

confirmed by a final order.  Section 943(b)(6) is satisfied here.

**M.      The Plan is in the Best Interest of Creditors and is Feasible in Accordance with § 943(b)(7).**

18.    The final requirement for confirmation of a plan in a chapter 9 case is that the

plan "is in the best interests of creditors and is feasible." 11 U.S.C. § 943(b)(7).  The analysis

included in the Plan, the Plan Confirmation Brief, and the other evidence related thereto,

submitted and adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive

and credible, (b) have not been controverted by other evidence and (c) establish that the Plan

affords all creditors the potential for the greatest economic return from Debtor's assets.

23

Case 10-04467-dd    Doc 141    Filed 04/01/11    Entered 04/01/11 16:41:21    Desc Main
Document    Page 24 of 41

Therefore, it is in the best interest of creditors, especially given the complex nature of this Case. It appears that the Projected Net Revenues from the Revised Traffic Study are reasonable, and based on those numbers and related evidence presented at the Confirmation Hearing, Debtor has the ability to make the payments required under the Plan and the terms of the Amended and Restated Bonds while still maintaining its operations. Accordingly, the Plan is in the best interests of creditors and feasible.

**N.    Releases and Injunctions.**

19.    The releases and injunctions described in Article V of the Plan are appropriate and necessary, and do not adversely or unfairly impact any particular person or class of creditors.

20.    The Plan provides for releases of and injunctive relief to third parties who are (1) providing substantial consideration to the Debtor's reorganization or (2) substantially compromising their claims. The Plan arises from unusual circumstances resulting in an involved and complex case. The releases and injunctions affect a global resolution of a multitude of complex issues among Debtor and the third party releasees. The contributions and concessions by the third party releasees are an essential component to the reorganization of Debtor and the future success of the Southern Connector and contribute to the feasibility of the Plan. At the Confirmation Hearing, the Bankruptcy Court heard detailed testimony from representatives of the Debtor, SCDOT, and the Senior Bonds Trustee on points related to the Plan release and injunction provisions and related matters.

21.    In consideration for the releases provided to them under the Plan, the Bondholders, the Senior Bonds Trustee, and the Subordinate Bonds Trustee are agreeing to release all of their claims and causes of action existing as of the Effective Date against SCDOT,

and their respective current and former officers, directors, employees, professionals and agents; including their claims against SCDOT arising from, among other things, the SCDOT's alleged failure to maintain toll rates on the Southern Connector as further and more fully set forth in the Plan and related Plan documents.  Additionally, the Bondholders are agreeing as further set forth in the Plan and related Plan documents (i) that SCDOT will be paid a percentage of the Net Revenues to reimburse SCDOT for a portion of its costs of maintenance, repair, renewal, resurfacing and replacement of the Southern Connector and (ii) to accept Amended and Restated Bonds in a lesser amount than the amount of their claims.  As further set forth in the Plan and related Plan documents, the allocation of certain funds from the Net Revenues for maintenance, repair, renewal, resurfacing and replacement of the Southern Connector is at a higher priority than currently exists under the License Agreement.

22.     In consideration for the releases provided to it under the Plan, SCDOT is giving significant concessions.  In particular, as further and more fully set forth in the Plan and related Plan documents, SCDOT has agreed to:  (a) enter into an amended License Agreement in order to carry out certain terms of the Plan and provide for the operation of the Southern Connector; (b) assume sole responsibility for all costs of the maintenance, repair, renewal and replacement of the Southern Connector in the same manner and to the same extent as it does the rest of the interstate highway system in the State, subject to applicable law, rules, regulations and standards including S.C. Act 114 (assuming then applicable); (c) allow the toll rates on the Southern Connector to be set by an independent toll consultant, subject to applicable law and the Amended License Agreement; (d) release all of its claims and causes of action existing as of the Effective Date against the Debtor, the Senior Bonds Trustee, the Subordinate Bonds Trustee, the Bondholders and their respective current and former officers, directors, employees,

professionals and agents; (e) waive its rights to past and future License Fees and other amounts arising from the current License Agreement and maintenance of the Southern Connector, all of which are due and payable to SCDOT; and (f) waive its Proof of Claim in this case, the amount of which exceeds $10 million.

23.     Certain courts have held that Section 524(e) should prohibit releases of third-parties.[2]  *See, e.g,. In re Zale Corp.,* 62 F.3d 746 (5th Cir. 1995).  This section provides that the "discharge of a debt of the debtor does not affect the liability of another entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).  However, like other courts interpreting 524(e) more broadly, "the Court of Appeals for the Fourth Circuit has upheld the jurisdiction and power of the bankruptcy court to permanently enjoin claims and actions against nondebtors in the context of a Chapter 11 plan of reorganization, as well as to grant releases to nondebtor third parties in that context." *In re MAC Panel Co.*, 2000 Bankr. LEXIS 1694, *23 (Bankr. M.D.N.C. 2000) (*citing In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir. 1989)).

24.     When a plan of reorganization includes third-party releases and injunctions, courts have weighed all or some of the following seven factors in determining whether such a release is appropriate:  (1) an identity of interests between the Debtor and the third party; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization; (4) overwhelming agreement by the impacted classes to support the release; (5) provision in the plan for substantially all of the claims of the impacted classes; (6) plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) the bankruptcy court made a record of specific factual findings that support its conclusions. *See In re Continental Airlines*, 203 F.3d 203 (3rd Cir. 2000); *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d

---

[2] Section 901 does not incorporate § 524(e), and therefore § 524(e) appears to be inapplicable in chapter 9 cases.

285 (2d Cir. 1992); *In re A.H. Robins Co., Inc.,* 880 F.2d 694 (4th Cir. 1989); *In re Transit*

*Group Inc*., 286 B.R. 811, 817 (Bankr. M.D. Fla. 2002) (citing *In re Dow Corning Corp*., 280

F.3d 648 (6th Cir. 2002)).

25.     The third party releases and injunctions contained in the Plan may be proper

without regard to the factor test because § 901 does not incorporate § 524(e).  However, even

applying the factors discussed above to this case, I find and conclude based on the record and

evidence before me, including testimony and representations at the Confirmation Hearing, that

the third party releases and injunctions contained in Debtor's Plan are appropriate and

necessary, and do not adversely or unfairly impact any particular class of creditors.

26.     First, the Debtor and SCDOT share an identity of interest, including because

SCDOT owns the Southern Connector and provides Debtor the right to operate the road by way

of the License Agreement.   Second, SCDOT and the Bondholders are providing substantial

consideration critical to effectuate the Plan and reorganization of the Debtor.   Third, the releases

are necessary to support all the parties' giving of such consideration and support of the Plan.

Fourth, all of the impacted classes of creditors overwhelmingly support and have voted in favor

of the Plan.   Fifth, the Plan provides for the Senior Bondholders, the Subordinate Bondholders

and SCDOT to receive payment by way of the New Waterfall, which divides among them all of

the Debtor's Projected Net Revenues as further set forth in the Plan and Plan documents.   The

sixth "opt out" factor noted above is typically employed in mass tort cases where multiple

claimants have individualized claims for damages against the debtor and each claim is based

upon separate and distinct factual circumstances particular to each claimant.   In this case, all

claims arise from the same facts and circumstances, namely that the Debtor is not generating

sufficient toll revenues to pay Bondholders and SCDOT.   In addition, as set forth above, all the

Debtor's Projected Net Revenue is being distributed to claimants under the Plan. This factor is not applicable in this case. Seventh, this Order contains the specific factual findings which support the Bankruptcy Court's conclusions for finding the releases and injunctions appropriate in this case, including the above and as further discussed herein. Accordingly, the foregoing applicable factors are satisfied in this case with regard to the third party releasees, and I find that the releases are necessary and reasonable as further set forth below.

27.    Debtor's ability to formulate any Plan for the Adjustment of Debts will be irreparably impaired absent any portion of the consideration described herein. Such absence of consideration would result in irreparable harm to Debtor and the parties in interest. The Plan and the releases are the product of an arms-length, good faith negotiation between Debtor, certain bondholders, the bond trustees, and SCDOT.

28.    The various forms of value and consideration provided by Debtor and Plan Releasees[3] are mutually dependent upon one another and therefore are not severable from one another. The failure to obtain approval of and effect the release, injunction, exculpation and discharge provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

29.    The injunction provisions set forth in Article V of the Plan are necessary to preserve and enforce the releases granted by the Plan and are narrowly tailored to achieve that purpose.

30.    Thus, each of the release, injunction, exculpation and discharge provisions set forth in the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a) and 1334(b); (b) is an essential means of implementing the Plan; (c) is an integral element of the settlements and transactions incorporated into the Plan; (d) is fair, equitable,

---

[3] The Plan defines "Plan Releasee(s)" as any person or entity that is released from the claims of or liabilities to any creditor or party in interest pursuant to the Plan.

appropriate, and reasonable; (e) confers material benefits on, and is in the best interests of, the Debtor and its creditors; (f) is important to the overall objectives of the Plan to finally resolve all claims among or against the parties-in-interest in this case with respect to the Debtor; and its organization, operation and reorganization; and (g) is consistent with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The record of the Confirmation Hearing and this case is sufficient to support the release, injunction, exculpation and discharge provisions contained in Article V of the Plan, and Article V of the Plan is hereby specifically approved.

**O.      Satisfaction of Confirmation Requirements.**

31.    Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in § 943(b) of the Bankruptcy Code.

**P.      Agreements and Other Documents:**

32.    Debtor has disclosed all material facts regarding: (a) the issuance of the Amended and Restated Bonds; (b) the Amended Trust Indenture, (c) the New License Agreement; (d) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtor; and (e) the adoption, execution and delivery of all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing.

33.    The Debtor will assume the New License Agreement and the Amended Trust Indenture.

34.    Under the Plan, the Bonds owned by Bondholders will be modified, amended and restated and the certificates of indebtedness evidencing the Bonds will be exchanged for the Amended and Restated Bonds. The Amended and Restated Bonds will continue to evidence the

original February 1998 loan from the Bondholders (used to finance the development of the Southern Connector and the cost of construction and financing thereof) with such loan subject to the modifications to the debt instruments contained in the Debtor's Plan as approved by this Order and set forth more fully in the Amended Trust Indenture and form of the Amended and Restated Bonds.

**Q.      Conditions to Confirmation.**

35.      Entry of the Confirmation Order, in a form and substance reasonably satisfactory to the Debtor, SCDOT and the Senior Bonds Trustee shall satisfy the conditions to Confirmation set forth in Article VII.C. of the Plan.

**R.      Likelihood of Satisfaction of Conditions Precedent to Effectiveness.**

36.      Each of the conditions precedent to Effectiveness, as set forth in Article VII.C. of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

**S.      Implementation.**

37.      All documents and agreements necessary to implement the Plan, the documents contained in the exhibits to the Plan (including, but not limited to, the New License Agreement, the Amended Trust Indenture, and the Amended and Restated Bonds and all documentation to be entered into in connection therewith) and all other relevant and necessary documents have been negotiated in good faith, at arm's length and are in the best interests of the Debtor and shall, upon completion of documentation and execution, be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

**T.      Modifications to the Plan.**

38.     Subsequent to solicitation, the Debtor made certain non-material modifications to the Plan. All modifications to the Plan since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, §§ 942 and 1127(d) of the Bankruptcy Code, the Federal Rules, including Rule 3019, and the Local Bankruptcy Rules.  None of the modifications made since the commencement of solicitation adversely affects the treatment of any creditor or equity security holder under the Plan. Accordingly, pursuant to § 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure or resolicitation, and under Rule 3019, creditors are deemed to have accepted the Plan as modified.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**A.     Confirmation of Plan.**

39.     The Plan is **APPROVED** and **CONFIRMED** under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including without limitation pursuant to § 943(b) of the Bankruptcy Code.  The Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

**B.     Objections.**

40.     There were no objections properly filed via the Bankruptcy Court's CM/ECF system and served pursuant to the Confirmation Hearing Notice.  However, the Bankruptcy Court received a letter from Thomas Stoeckmann to the Honorable David R. Duncan dated March 2, 2011 ("Stoeckmann Letter"), which objected to confirmation of the Plan.  While not properly filed or served, the Bankruptcy Court has reviewed the Stoeckmann Letter, considered

each objection raised therein and the Debtor's responses thereto including at the Confirmation

Hearing.  The Bankruptcy Court hereby overrules the objections in the Stoeckmann Letter, and

as set forth more fully herein, finds that the Plan satisfies the elements of the Bankruptcy Code

as set forth above, including § 943(b), and should be confirmed.

**C.      Findings of Fact and Conclusions of Law.**

41.     The findings of fact and the conclusions of law stated in this Confirmation Order

shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to the proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of

law announced by this Bankruptcy Court on the record in connection with Confirmation of the

Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the

extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed,

and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so

deemed. To the extent that any of the findings of fact or conclusions of law constitutes an order

of this Bankruptcy Court, they are adopted as such.

**D.      Approval of Plan Documents.**

42.     Upon the Effective Date, all actions contemplated by or in furtherance of the Plan

shall be deemed authorized and approved in all respects, including, but not limited to, issuance

of the Amended and Restated Bonds, and execution, delivery and performance of the Amended

Trust Indenture and the New License Agreement.

43.     The terms of the Plan and exhibits thereto are incorporated by reference into, and

are an integral part of, the Confirmation Order. The form and substance of the Plan (and

exhibits thereto, including but not limited to, the Amended Trust Indenture, the Amended and

Restated Bonds, and the New License Agreement as such documents may be amended in final

form in accordance with the Plan), and each of their provisions are confirmed and approved in each and every respect pursuant to § 943 of the Bankruptcy Code.  Except as may be set forth in the Plan, the Debtor is authorized and empowered to make any and all modifications to any and all documents included as part of the Plan that may be agreed to by the parties thereto and that are consistent with and in furtherance of the terms of the Plan and the terms of this Confirmation Order.

**E.      Authority.**

44.      The Debtor and its respective directors, officers, managers, agents, representatives, and attorneys, are authorized and empowered to (a) issue, execute, deliver, file and record, as appropriate, any contracts, instruments, releases, indentures, bills of sale, assignments, leases or other agreements or documents and (b) perform such other acts and execute and deliver such other documents as are required by, consistent with and necessary or appropriate to implement, effectuate or consummate the Plan and this Confirmation Order and the transactions contemplated thereby and hereby, including the transactions contemplated by the Amended Trust Indenture and/or the New License Agreement, all without the requirement of further application to, or order of, the Bankruptcy Court.

**F.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

45.      All contracts and leases of the Debtor that may constitute executory contracts or unexpired leases as of the Petition Date shall be assumed except for the Goldman Contract. The Debtor assumes all known potential executory contracts to which the Debtor is a party, including but not limited to the Original Trust Indenture and License Agreement, as amended and restated in the Amended Trust Indenture and the New License Agreement, respectively. Attached as Appendix D.1 to the Plan is a list of the known executory contracts being assumed

by the Debtor, including but not limited to the Original Trust Indenture and License Agreement, as amended and restated in the Amended Trust Indenture and the New License Agreement, respectively.  The Amended Trust Indenture and New License Agreement thus are hereby specifically assumed by the Debtor to the extent required.  With respect to the Goldman Contract (listed as an executory contract being rejected solely out of an abundance of caution), it has expired by its terms and been terminated but also is hereby deemed rejected.  Any other contract or lease that expired pursuant to its terms prior to the Effective Date, and that has not been assumed or rejected by Final Order prior to the Effective Date, is hereby deemed rejected.

**G.    Injunctions and Releases.**

46.    Subject to the occurrence of the Effective Date and pursuant to applicable law and § 944 of the Bankruptcy Code, the discharge of the Debtor and any of its assets or properties, the releases, the injunction provisions and the exculpation provisions each as provided in Article V of the Plan, are (a) deemed incorporated in this Confirmation Order as if set forth in full herein, (b) hereby approved and authorized in their entirety as an integral part of the Plan and (c) hereby deemed and held to be fair, equitable, reasonable and in the best interests of the Debtor and its creditors.  Except as otherwise specifically provided in the Plan (and except as may be necessary to enforce the provisions of the Plan or remedy a breach of the Plan), this Confirmation Order acts as of the Effective Date as a full and complete discharge of all Claims against the Debtor, the post-Effective Date Debtor, or the post-Effective Date Debtor's assets of any nature whatsoever, including, without limitation, any liability of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, that arose or have been asserted against the Debtor at any time before the entry of the Confirmation Order or that arise from any pre-

Confirmation conduct of the Debtor whether or not the Claim(s) are known to or knowable by the holder of a Claim.

47.     Except as otherwise provided herein or in the Plan, from and after the effective date, any and all potential claimants shall be permanently enjoined from commencing or continuing in any manner, any suit, action, or other proceeding, on account of or respecting any claim, obligation, debt, right, cause of action, remedy or liability, or any other claim or cause of action released or to be released pursuant to the Plan, against the Debtor or any or all of the Plan releasees.

48.     This Order permanently enjoins the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities, released pursuant to the Plan against any Plan Releasee.  Thus, except as otherwise provided in the Plan, all parties having a claim against the Debtor or any Plan Releasee arising prior to the Effective Date of the Plan shall with respect thereto be enjoined on and after the effective date from:

- commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any of the Plan Releasees or his/her/its direct or indirect successor in interest (including, without limitation, all suits, actions, and proceedings that are pending, or may be filed as of the Effective Date), which must be withdrawn or dismissed with prejudice;

- enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against a Plan Releasee or his/her/its assets or property, or his/her/its direct or indirect successor in interest, or any assets or property of such successor;

- creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien against a Plan Releasee or his/her/its assets or property, or his/her/its indirect or indirect successors in interest, or any assets or property of such successor;

- asserting any set-off, right of subrogation, or recoupment of any kind, directly or

indirectly, against any obligation due a Plan Releasee or his/her/its assets or property, or his/her/its direct or indirect successors in interest, or any assets or property of such successor; and

- proceeding in any manner that does not conform or comply with the provisions of the Plan.

49.     In addition, all injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Case pursuant to §§ 105, 362, 524 or 922 of the Bankruptcy Code, or otherwise that are in effect on the Confirmation Date, shall remain in full force and effect until the Final Decree.  For the avoidance of doubt, nothing herein shall be deemed or construed to enjoin or prevent any party from enforcing the provisions of the Plan after Confirmation and the Effective Date.

50.     Notwithstanding any provision herein to the contrary, nothing herein or in the Plan shall: (i) discharge or release any person or entity from any claim, right, power or cause of action held or assertable by the United States Securities and Exchange Commission (the "SEC") with respect to the SEC's police or regulatory function, or (ii) impair, preclude or enjoin the SEC from commencing or continuing any investigation or taking any action against any person or entity in any nonbankruptcy forum.

## H.     Notice of Entry of the Confirmation Order.

51.     In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtor and/or its Solicitation Agent shall serve the Notice of Entry of the Confirmation Order ("Notice of Confirmation") by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any party to whom the Debtor

mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such party of their new address. Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, including Bankruptcy Rules 2002 and 3020(c), and no other or further notice or publication is necessary.

52.    The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**I.    References to Plan Provisions.**

53.    The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise specifically modified in this Confirmation Order at Section S below).

**J.    Actions in Reliance on Order.**

55.    Actions taken by the parties in reliance upon the Confirmation Order and prior to the filing of any motion to alter or amend the Court's order will be effective.  If any notice of appeal is filed and no stay pending appeal is received, the Confirmation Order will remain effective and parties may take action in reliance on the Confirmation Order.

K.      **Applicable Non-Bankruptcy Law.**

56.      Pursuant to Bankruptcy Code §§ 1123(a) and 944(a), the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.   Debtor is not otherwise prohibited by law from taking any action necessary to carry out the Plan as required by §943(b)(4).

L.      **Governing Law.**

57.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of South Carolina, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

M.      **Effectiveness of All Actions.**

58.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order as applicable, without further application to, or order of, the Bankruptcy Court, further act or action under applicable law, regulation, order, or rule or vote, consent or authorization, or further action by the respective officers, directors or members of the Debtor and with the effect that such actions had been taken with the consent and by unanimous action of such officers, directors or members. In addition to the authority to execute and deliver, adopt, assign and/or amend, as the case may be, the contracts, instruments, releases and other

agreements specifically granted in this Confirmation Order, the Debtor is authorized, and empowered, without necessity of action of their respective officers, directors or members, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents and/or transactions contemplated by the Plan, this Confirmation Order, the Amended and Restated Bonds, the Amended Trust Indenture and/or the New License Agreement.

**N.      Modification of the Plan Prior to Consummation.**

59.      Subject to certain restrictions and requirements set forth in §§ 942 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, after the Confirmation Date and prior to consummation of the Plan, the Debtor may: (a) amend or modify the Plan one or more times as may be necessary to carry out the purposes and effects of the Plan so long as such amendment(s) do not materially and adversely affect the treatment of any creditor or equity security holder under the Plan and (b) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to the Bankruptcy Code, including § 942, the Bankruptcy Rules, and the Local Bankruptcy Rules, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**O.      Final Confirmation Order.**

60.      This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan.

**P.      Retention of Jurisdiction.**

61.      This Bankruptcy Court's retention of jurisdiction as set forth in Article X of the

Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation

Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending

matters; provided, however, that on and after the Effective Date, notwithstanding anything to the

contrary in this Confirmation Order or the Plan, the Bankruptcy Court's retention of jurisdiction

shall not govern the enforcement of documents executed in connection with the Amended Trust

Indenture and/or the New License Agreement or any rights or remedies related thereto or any

matters arising out of, or related to, Amended Trust Indenture and/or the New License

Agreement.

**Q.      Severability of Plan Provisions.**

62.      Each term and provision of the Plan, as it may be altered or interpreted, is valid

and enforceable pursuant to its terms.

**R.      Nonseverable and Mutually Dependent.**

63. The provisions of this Confirmation Order are nonseverable and mutually dependent.

**S.      Provisions in Settlement of Class 6 Lehman Brothers Claim.**

64. The following will revise the language of Article II, B. 7. of the Plan:

**7.      Class 6. Lehman Brothers Claims.** Replace existing paragraph with the

following:

"In full and complete settlement, satisfaction and discharge of such Claim, the
Class 6 Claim shall be paid $800,000.00 as described more fully in the Consent
Order On Settlement and Compromise of Proof of Claim No. 14 entered by the
Court. Upon receipt of the $800,000.00 by Lehman Brothers, the Lehman
Brothers Proof of Claim shall be deemed withdrawn with prejudice and
disallowed. All other terms and conditions of the settlement as set forth in the

Consent Order On Settlement and Compromise of Proof of Claim No. 14 entered
by the Court are incorporated herein and shall remain in full force and effect."

AND IT IS SO ORDERED.